UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

Case No. 6:08-cr-*176-ORL-28 GJK*

18 U.S.C. § 371

FRANK L. AMODEO

18 U.S.C. § 1343
18 U.S.C. § 1505
26 U.S.C. § 7202
18 U.S.C. § 981(a)(1)(C) - Forfeiture
28 U.S.C. § 2461(c) - Forfeiture

**INDICTMENT**

The Grand Jury charges:

**COUNT ONE**
**(CONSPIRACY)**

**A. Introduction**

At times material to this Indictment:

1.     Presidion Corporation was a publicly traded corporation incorporated in Florida with offices located in Troy, Michigan, which was later de-listed.  Presidion Corporation itself conducted no business activity.

2.     Presidion Solutions, Inc. (Presidion Solutions) was a Florida corporation with offices located in Troy, Michigan; Orlando, Florida; Jupiter, Florida; and Miami, Florida.  Defendant **FRANK L. AMODEO** controlled Presidion Solutions from on or about June 2005 until July 2007.  Presidion Solutions was a holding company for several professional employee organizations (PEOs) that provided comprehensive and integrated resource management services, including payroll services, to small and medium sized companies.  Over ninety-five percent of Presidion Solutions' clients were

based in Florida.  Presidion Solutions was a wholly owned subsidiary of Presidion Corporation.

3.      Mirabilis Ventures, Inc. (Mirabilis) was a Nevada Corporation, with offices located in Orlando, Florida.  Mirabilis had a number of presidents from its inception to April 2008; however, defendant **FRANK L. AMODEO**, although not an officer or director, controlled Mirabilis from about the summer of 2004 but no later than January 2005 until April 2008.

4.      From 2001 through 2005, Presidion Solutions acquired 7 PEOs, which made up Presidion Solutions' "book of business", i.e., the contracts Presidion Solutions had with its clients.  In 2001, Presidion Solutions acquired Sunshine Staff Leasing, Sunshine Companies I, Sunshine Companies II, Sunshine Companies III and Sunshine Companies IV (herein after referred to as the Sunshine Companies).  Subsequently, the Sunshine Companies did business as Presidion Solutions I, Presidion Solutions II, Presidion Solutions III, Presidion Solutions IV and Presidion Solutions V, respectively.

5.      Presidion Solutions acquired Paradyme, Inc. (Paradyme) doing business as Presidion Solutions VI, in 2002 and acquired Professional Benefit Solutions, Inc., d/b/a Presidion Solutions VII, Inc. (PBS), in 2005.  With the acquisitions of the Sunshine Companies, Paradyme and PBS, Presidion Solutions had at least 2,200 clients and approximately 29,700 worksite employees.

6.      Presidion Solutions engaged in "SUTA dumping," which involves "transferring" the "book of business" from one PEO subsidiary to another, depending on the State Unemployment Tax (SUTA) rates for the PEO subsidiaries. The SUTA rates changed on a yearly basis, so depending on which PEO subsidiary had the best SUTA

rate for the year, the PEO subsidiary with the lowest SUTA rate would report the payroll wages and the payroll taxes. The bulk of Presidion Solutions' "book of business" was reported by PBS during 2005 and 2006.

7.     The clients of the PEOs entered into contracts, or service agreements, with Presidion Solutions (or its predecessors). Initially the clients entered into the agreement with the Sunshine Companies; then later on, the clients either entered into an agreement with Paradyme or PBS.

8.     According to the contracts signed by the clients when Presidion Solutions (or its predecessors) started providing services to the clients, Presidion Solutions became the co-employer of its clients' employees and assumed the liabilities and responsibilities for reporting and paying over to the Internal Revenue Service the payroll wages and the payroll taxes of the worksite employees.

9.     At the end of a client's payroll cycle, a client would e-mail, fax or mail the number of hours worked by the worksite employees to Presidion Solutions. After receiving the information, Presidion Solutions computed the amount of Federal Insurance Contributions Act (FICA) taxes, Medicare, withholding taxes, workers' compensation insurance and 401K contributions to be added to the clients' bill, along with Presidion Solutions' administrative fee. Presidion Solutions would then e-mail, fax or mail this information back to the clients, who would either direct debit, mail or wire the funds to Presidion Solutions.

10.     There were a number of companies, including Mirabilis and affiliates of Mirabilis, which were controlled by defendant **FRANK L. AMODEO** and the other

3

co-conspirators, which played a part in the tax fraud and wire fraud scheme. The companies involved in the scheme included AEM, Inc., d/b/a Mirabilis HR (AEM), AQMI Strategy Corporation (AQMI), Common Paymaster Corporation (Common Paymaster), Nexia Strategy Corporation (Nexia), Presidion Corporation, Presidion Solutions, Quantum Delta Enterprises, Inc., d/b/a Siren Resources, Inc. (Quantum), Wellington Capital Group, Inc. (Wellington) and various other companies.

## B. **THE AGREEMENT**

11.     Between approximately August 2004, and continuing thereafter through in or about February 2007, in Orange County, Florida, in the Middle District of Florida, and elsewhere,

### FRANK L. AMODEO

the defendant herein, did knowingly and willfully combine, conspire, confederate and agree, with others both known and unknown to the Grand Jury, to defraud the United States for the purpose of impeding, impairing, obstructing and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment and collection of the revenue: to wit, payroll taxes, and to commit offenses against the United States, to-wit: Wire Fraud, in violation of Title 18, United States Code, Section 1343, and Obstruction of an Agency Proceeding, in violation of Title 18, United States Code, Section 1505.

## C. MANNER AND MEANS OF THE CONSPIRACY

12.     The substance of the conspiracy included, among other things, the following:

4

a.      It was a part of the conspiracy that defendant **FRANK L. AMODEO**, along with co-conspirators, would control a web of one public and several private companies, including multiple PEOs.

b.      It was a further part of the conspiracy that defendant **FRANK L. AMODEO** and co-conspirators would attempt to absolve themselves of the responsibility for existing payroll tax liabilities and to divert payroll tax funds paid by the PEO clients to the PEOs that defendant **FRANK L. AMODEO** and co-conspirators controlled.

c.      It was a further part of the conspiracy that defendant **FRANK L. AMODEO** and co-conspirators would purchase assets in defendant **FRANK L. AMODEO**'s name and/or in the names of co-conspirators and/or in the names of nominees, including real estate, airplanes, vehicles and other companies.

d.      It was a further part of the conspiracy that, even though defendant **FRANK L. AMODEO** was not to be listed as a director, officer or shareholder for some of the companies involved in the scheme, defendant **FRANK L. AMODEO** and his co-conspirators directed the business activities of all the companies involved in the scheme.

e.      It was a further part of the conspiracy that defendant **FRANK L. AMODEO** would use funds received by AQMI from Presidion Solutions in order to make the purchase of the Sunshine Companies, knowing at the time of the purchase that the Sunshine Companies had existing payroll tax liabilities.  Defendant **FRANK L. AMODEO**'s purchase of the Sunshine Companies did not include Presidion Solutions' "book of business", which was transferred to Paradyme.

5

f.     It was a further part of the conspiracy that AQMI would provide a line of credit in the amount of approximately $3,000,000.00 to Wellington, a company controlled by defendant **FRANK L. AMODEO**.

g.     It was a further part of the conspiracy that the principals of Presidion Solutions would provide AQMI the money to fund the Line of Credit which was then used to purchase the Sunshine Companies.

h.     It was a further part of the conspiracy that defendant **FRANK L. AMODEO** would gain control of Presidion Solutions' remaining PEO subsidiaries, i.e., Paradyme and PBS.

i.     It was a further part of the conspiracy that after gaining control of Paradyme and PBS, defendant **FRANK L. AMODEO** would direct that funds collected from Presidion Solutions' clients, which were represented to the clients as funds to be used to pay the payroll taxes, not be paid over to the Internal Revenue Service during 2005 and 2006.

j.     It was a further part of the conspiracy that defendant **FRANK L. AMODEO** would cause to be opened at First Southern Bank an account in the name of Presidion Solutions, titled as the "Reserve account" (Reserve account), the purpose of which was to conceal the source of the funds from the employees, Internal Revenue Service, regulators and others.

k.     It was a further part of the conspiracy that the Reserve account would receive funds from a Bank of America account in the name of Presidion Solutions, titled as the "Ultimate Master account" (Ultimate Master account).

l.      It was a further part of the conspiracy that defendant **FRANK L. AMODEO** would direct funds that should have been used to pay the payroll taxes for PBS be transferred from the Ultimate Master account, which held the payroll tax funds, to the Reserve account.

m.      It was a further part of the conspiracy that the funds would be dispersed at defendant **FRANK L. AMODEO's** direction and for his benefit and the benefit of co-conspirators.

n.      It was a further part of the conspiracy that defendant **FRANK L. AMODEO** and one or more of co-conspirators would knowingly fail to remit to the Internal Revenue Service payroll taxes, including FICA and withholding taxes (also referred to as trust fund taxes).

o.      It was a further part of the conspiracy that defendant **FRANK L. AMODEO** and other co-conspirators would attempt to conceal Presidion Solutions' "book of business" and the responsibility for the remittance of PBS' payroll taxes to the Internal Revenue Service by entering into a number of management/assignment agreements between companies controlled by defendant **FRANK L. AMODEO**.

p.      It was a further part of the conspiracy that Mirabilis, a private equity fund, would be used as the umbrella company used in the tax fraud and wire fraud scheme and would be controlled by defendant **FRANK L. AMODEO** and other co-conspirators.

q.      It was a further part of the conspiracy that Mirabilis would buy distressed businesses and would eventually evolve into a business that specialized in acquisitions of and mergers with other businesses in various industries. By late 2006, Mirabilis had grown to be a conglomerate of approximately 70 companies involved in various

industries, including consulting, corporate security, employee leasing and hotel ownership.

r.      It was a further part of the conspiracy that defendant **FRANK L. AMODEO** would direct that funds be directly transferred from a Bank of America account in the name of AEM to companies controlled by defendant **FRANK L. AMODEO** and the other co-conspirators, such as Common Paymaster and Mirabilis, to fund the companies' operations and to acquire other companies.

s.      It was a further part of the conspiracy that during 2005 and 2006, defendant **FRANK L. AMODEO** and co-conspirators would use diverted payroll tax funds to fund operations and acquire numerous companies under the Mirabilis "umbrella."

t.      It was a further part of the conspiracy that defendant **FRANK L. AMODEO** and co-conspirators would provide false information or fail to provide all material information to Internal Revenue Service revenue officers attempting to collect unpaid payroll taxes from PEOs controlled by defendant **FRANK L. AMODEO** and co-conspirators.

### OVERT ACTS

13.     In furtherance of the conspiracy, and to effectuate its objectives, the following overt acts, among others, were committed within the Middle District of Florida, and elsewhere:

a.      On or about October 18, 2004, defendant **FRANK L. AMODEO**, as the president of AQMI, signed a consulting agreement with Presidion Solutions. The consulting agreement called for defendant **FRANK L. AMODEO** to provide tax advice to

Presidion Solutions for a non-refundable fee in the amount of $150,000.00 and an additional fee of 25% of any tax savings of the company's current payroll tax liability, which at the time, was approximately $13,000,000.00 (including taxes, penalties and interest).

      b.     On or about October 18, 2004, defendant **FRANK L. AMODEO** took out a line of credit in the amount of $3,000,000.00 from AQMI, so he could justify using funds paid to AQMI for his benefit.

      c.     On or about December 1, 2004, AQMI provided a line of credit in the amount of approximately $3,000,000.00 to Wellington, a company controlled by defendant **FRANK L. AMODEO**.

      d.     On or about December 8, 2004, defendant **FRANK L. AMODEO**, through Wellington, agreed to purchase the Sunshine Companies for approximately $500,000.00. Defendant **FRANK L. AMODEO** used the line of credit Wellington had with AQMI to provide funds to Wellington to complete the purchase of the Sunshine Companies.

      e.     On or about December 8, 2004, Presidion Solutions provided defendant **FRANK L. AMODEO** with a limited power of attorney to make payroll tax payments for the Sunshine Companies.

      f.     On or about December 17, 2004, Presidion Solutions transferred approximately $1,284,986.58 to AQMI, per the limited power of attorney described in 13e above, which then transferred approximately $1,000,000.00 to Wellington per the line of credit described in 13c above. Subsequently, Wellington would purchase multiple cashier's checks to complete the purchase of the Sunshine Companies. The

9

funds transferred on this date to AQMI were actually funds intended to be used as payroll taxes for the Sunshine Companies.

g.      On or about December 30, 2004, a co-conspirator, as president of Paradyme, entered into an assignment and assumption agreement with the Sunshine Companies whereby the Sunshine Companies transferred to Paradyme the "book of business."

h.      On or about February 16, 2005, Presidion Solutions "assigns, transfers, sets over and delivers to" the Sunshine Companies all of Presidion Solutions "right, title and interest" in the consulting agreement dated October 14, 2004, between Presidion Solutions and AQMI.

i.      On or about April 29, 2005, Mirabilis purchased AEM for approximately $125,000.00. At the time of the purchase, AEM was a PEO shell. Defendant **FRANK L. AMODEO** and the other co-conspirators intended to transfer Presidion Solutions' "book of business" to AEM because: i) AEM had a better SUTA rate than Paradyme and PBS, and ii) because Presidion Solutions' name was tainted in the PEO industry.

j.      On or about May 1, 2005, Presidion Corporation entered into a consultant agreement with Nexia that called for Nexia to provide consulting services to Presidion Corporation. A co-conspirator signed the agreement on behalf of Presidion Corporation and defendant **FRANK L. AMODEO** signed the agreement on behalf of Nexia.

k.      On or about May 16, 2005, a co-conspirator, as president of Paradyme, entered into an amendment to the December 30, 2004 agreement. The amendment detailed that a promissory note in the amount of $12,241,475.65, the value of the "book of business", would be written by Paradyme for the benefit of the Sunshine Companies.

This agreement indicated that the promissory note between the Sunshine Companies and Paradyme should be effective as of December 31, 2004.

   l.      On or about May 24, 2005, two co-conspirators, as majority shareholders in Presidion Corporation, gave defendant **FRANK L. AMODEO** power of attorney to vote their shares.

   m.      On or about May 31, 2005, the Sunshine Companies, which were then controlled by defendant **FRANK L. AMODEO** via Wellington, assigned the Paradyme promissory note dated December 31, 2004 in the amount $12,241,475.65 to Mirabilis, a company controlled by defendant **FRANK L. AMODEO**.  Defendant **FRANK L. AMODEO** signed the assignment of the promissory note on behalf of the Sunshine Companies.  A co-conspirator, a member of the Board of Directors for Mirabilis and for Presidion Corporation, signed the assignment on behalf of Mirabilis.

   n.      On or about June 6, 2005, another co-conspirator, a member of the Board of Directors for Mirabilis and for Presidion Corporation, also gave power of attorney to defendant **FRANK L. AMODEO** for his shares of Presidion Corporation stock.  This power of attorney and the two powers of attorney referred to in paragraph l above allowed defendant **FRANK L. AMODEO** to vote as the majority shareholder of Presidion Corporation.

   o.      On or about June 8, 2005, the Board of Directors for Presidion Corporation met and resolved the following:

             i.      defendant **FRANK L. AMODEO** was appointed interim Vice President of Presidion Corporation;

11

ii.     defendant **FRANK L. AMODEO** was added to all Presidion

Corporation accounts at Bank of America;

iii.    any payments, purchase orders and contracts made by the

company, with the exception of net payroll checks, shall require

defendant **FRANK L. AMODEO**'s written authorization; and

iv.    Presidion Corporation would open new banking accounts at First

Southern Bank.

p.     On or about June 8, 2005, defendant **FRANK L. AMODEO** opened the

Reserve account based upon the authorization provided by the resolution passed by the

Board of Directors for Presidion Corporation.  This account received funds from the

Ultimate Master account, which collected funds meant to pay payroll tax funds.

q.     On or about June 27, 2005, defendant **FRANK L. AMODEO**, as president

of the Sunshine Companies, directed Mirabilis, a company controlled by defendant

**FRANK L. AMODEO**, to direct all payments under the May 31st assignment to the

Internal Revenue Service on behalf of the Sunshine Companies.

r.     Beginning in June 2005 and continuing through December 2005, a tax

director for Presidion Solutions notified a co-conspirator daily via e-mail about the

expenses and payables for Presidion Solutions, which included the payroll taxes for

Paradyme and for PBS.  After the co-conspirator received the daily e-mail from the tax

director, the co-conspirator forwarded the tax director's original e-mail to defendant

**FRANK L. AMODEO**.  Defendant **FRANK L. AMODEO**'s administrative assistant

replied to the co-conspirator's e-mail after the administrative assistant received

directions on what to pay from defendant **FRANK L. AMODEO**, including whether to pay the payroll taxes for Paradyme and for PBS.

s.    In or about summer 2005, the Sunshine Companies were dissolved.

t.    On or about July 28, 2005, Wellington purchased Presidion Solutions, including Paradyme and PBS, for approximately $100,000.00, as during the first half of 2005, Presidion Solutions was experiencing problems with its workers' compensation insurance carrier.  This purchase was made to avoid the loss of the workers' compensation insurance coverage.

u.    On or about July 28, 2005, AEM signed a contract for management services with Presidion Solutions where Presidion Solutions agreed to let AEM manage Presidion Solutions' "book of business" for a 2% fee.  According to the contract, AEM was to "comply with applicable federal, state, and local law, rules, and regulations, codes, statutes, ordinances and orders of any governmental or regulatory authority."

v.    On or about July 28, 2005, AEM and PBS entered into an assignment agreement, which provided that AEM would have "right, title and interest to the Client Service Agreement/Subscriber Agreements (the Presidion Solutions "book of business"), but no liabilities (payroll taxes)."

w.    On August 31, 2005, Presidion Solutions and AEM amended the contract for management services entered into on July 28, 2005, which provided that AEM would continue to manage the Presidion Solutions "book of business" until December 31, 2005.

x.    On or about September 8, 2005, AEM and PBS signed an amendment to the assignment agreement dated July 28, 2005.  A co-conspirator, representing PBS,

13

and another co-conspirator, representing AEM, signed the amendment which extended the time frame during which AEM managed Presidion Solutions' "book of business" to December 31, 2005.

y.      On or about October 3, 2005, the Board of Directors for Wellington, which consisted only of defendant **FRANK L. AMODEO**, authorized a co-conspirator, as president of Presidion Solutions, which had been purchased by Wellington, to enter into an indemnity agreement with Mirabilis, a company controlled by defendant **FRANK L. AMODEO**. Per the indemnity agreement dated October 4, 2005, Mirabilis became responsible for Presidion Solutions' liabilities, including any payroll tax liabilities, and Presidion Solutions was supposed to pay Mirabilis $50,000,000.00 by the end of the year.

z.      On or about December 13, 2005, Mirabilis transferred the October 4, 2005 indemnity agreement to Titanium Consulting Services, Inc. (name subsequently changed to Titanium Technologies, Inc.).

aa.      On or about December 31, 2005, AEM and PBS entered into a second amendment to the assignment agreement dated July 28, 2005.

bb.      From December 2004 through April 2008, approximately $3,200,000.00 had been paid towards the Sunshine Companies' payroll tax liabilities, which to that date totaled approximately $30,000,000.00 (including taxes, penalties and interest).

cc.      From on or about June 10, 2005 until on or about December 31, 2005, defendant **FRANK L. AMODEO**, who controlled and directed all the banking activity of the Reserve account, caused to be transferred approximately $64,600,000.00 to the Reserve account from the Ultimate Master account. The funds were used by defendant

**FRANK L. AMODEO** to purchase, fund and grow additional businesses, such as AQMI, Mirabilis, Nexia, Quantum and Wellington. Specifically, approximately $34,000,000.00 was transferred from the Reserve account to Mirabilis, although that money was supposed to be used for the payment of payroll taxes for PBS.

dd.　　At the beginning of 2006, a Bank of America account in the name of AEM, titled as the "Depository account" (Depository account), was used to collect funds from the PEO clients. The funds from the Depository account were swept to a Bank of America account in the name of AEM titled as the "Master account" (Master account). During the year, the funds from the PEO clients intended to pay the payroll taxes for PBS were deposited into the Master account, but were not used for that purpose.

ee.　　In February 2006, defendant **FRANK L. AMODEO** faxed a letter to an Internal Revenue Service revenue officer which stated that he was "creating new strategies that will give him control of the operating subsidiaries. As a result of this process, I have been able to disentangle the assets from a web of claims, encumbrances, and security interests that were impeding both of us from recovering monies owed to Internal Revenue Service."

ff.　　On or about April 1, 2006, AEM, Paradyme and Wellington entered into a transfer agreement that stated that Paradyme would assign, sell and transfer to AEM all contracts that Paradyme had with clients. A co-conspirator signed the agreement on behalf of AEM and another co-conspirator signed on behalf of Paradyme. A third co-conspirator signed the transfer agreement on behalf of Wellington.

gg.　　On or about May 9, 2006, AEM rescinded the assignment agreements between AEM and PBS.

15

hh.     On or about June 26, 2006, a co-conspirator advised an Internal Revenue Service revenue officer that payroll tax money not paid to the Internal Revenue Service was used to purchase two other companies, when, in fact, the money was used to purchase, among other things, several companies, cars, a plane and real estate.

ii.     On or about July 1, 2006, a co-conspirator, representing AEM, indicated to another co-conspirator, representing PBS, that AEM "would like to extend the services which AEM is currently providing to Presidion Solutions VII." The co-conspirator representing AEM also stated that AEM would remit to the Internal Revenue Service the payroll taxes for PBS.

jj.     During the year 2006, the funds intended to pay the payroll taxes for PBS were held in the Master account along with funds to pay the payroll taxes for AEM, which had its own minuscule "book of business." Instead of paying the payroll taxes for PBS, defendant **FRANK L. AMODEO** directed funds transferred from the Master account to a SunTrust Bank account in the name of Presidion Solutions, titled as the "Capital account" (Capital account). During the year 2006, approximately $23,750,000.00 was transferred from the Master account to the Capital account. Defendant **FRANK L. AMODEO** controlled and directed all the banking activity of the Capital account. After the funds were transferred to the Capital account, the funds were used by defendant **FRANK L. AMODEO** and co-conspirators to purchase, fund and grow additional businesses, such as AQMI, Mirabilis and Quantum.

kk.     On or about July 20, 2006, defendant **FRANK L. AMODEO** and a co-conspirator met with Internal Revenue Service representatives and gave a false explanation concerning the shortfall of payroll taxes.

ll.    On or about August 29, 2006, Defendant **FRANK L. AMODEO** and co-conspirators met to conduct a "mock deposition" of defendant **FRANK L. AMODEO** to "prepare" him for a meeting with Internal Revenue Service revenue officers.

mm.    Defendant **FRANK L. AMODEO** and co-conspirators knowingly failed to remit to the Internal Revenue Service payroll taxes totaling approximately $181,810,518.66, including approximately $129,655,309.04 in FICA and withholding taxes (also referred to as trust fund taxes), for Sunshine Companies III (4th quarter, 2004); Sunshine Staff Leasing (4th quarter, 2004); PBS (2nd, 3rd, and 4th quarters, 2005; 1st, 2nd, 3rd, and 4th quarters, 2006).

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH TEN
### (FAILURE TO REMIT PAYROLL TAXES)

14.    Count One, paragraphs One through Ten, are hereby re-alleged and incorporated by reference as though fully set forth herein.

15.    Between on or about December 1, 2004 and December 31, 2006, in Orlando, Orange County, Florida, in the Middle District of Florida, and elsewhere,

### FRANK L. AMODEO

the defendant herein, who, for the following companies and periods, deducted and collected, and caused to be deducted and collected, from the total taxable wages of the employees of client companies, federal payroll taxes in the sum of $181,810,518.66, including $129,655,309.04 in FICA and withholding taxes (also referred to as trust fund taxes), did willfully fail to truthfully account for and pay over to the Internal Revenue

17

Service said federal payroll taxes withheld due and owing to the United States of

America for the following companies and periods:

| COUNT | CORPORATION | EIN | PERIOD | AMOUNT |
|-------|-------------|-----|--------|--------|
| Two | Sunshine Companies III | 59-2720548 | 2004 4th Quarter | $ 3,641,437.01 |
| Three | Sunshine Staff Leasing | 59-2280930 | 2004 4th Quarter | $ 5,502,515.31 |
| Four | Professional Benefit Solutions | 65-0991757 | 2005 2nd Quarter | $11,029,002.64 |
| Five | Professional Benefit Solutions | 65-0991757 | 2005 3rd Quarter | $31,461,088.10 |
| Six | Professional Benefit Solutions | 65-0991757 | 2005 4th Quarter | $29,343,761.14 |
| Seven | Professional Benefit Solutions | 65-0991757 | 2006 1st Quarter | $26,113,361.73 |
| Eight | Professional Benefit Solutions | 65-0991757 | 2006 2nd Quarter | $27,042,950.02 |
| Nine | Professional Benefit Solutions | 65-0991757 | 2006 3rd Quarter | $25,783,770.85 |
| Ten | Professional Benefit Solutions | 65-0991757 | 2006 4th Quarter | $21,892,631.86 |

All in violation of Title 26, United States Code, Section 7202, and Title 18, United

States Code, Section 2.

## COUNTS ELEVEN THROUGH TWENTY-SIX
### (WIRE FRAUD)

16.     Count One, paragraphs One through Ten, are hereby re-alleged and

incorporated by reference herein.

### THE SCHEME TO DEFRAUD

17.     From a date unknown, possibly as early as August 2004, but no later than

in or about December 2004, and continuing to in or about February 2007, in Orlando,

Orange County, Florida, in the Middle District of Florida, and elsewhere,

**FRANK L. AMODEO**

18

the defendant herein, knowingly devised and executed a scheme and artifice to defraud clients of PEOs controlled by defendant **FRANK L. AMODEO** of money and property, and to obtain money and property of said clients, by means of false and fraudulent pretenses, representations and promises.

**MANNER AND MEANS**

18.   The substance of the scheme and artifice to defraud and to obtain money and property by false pretenses, representations and promises included, among other things, the manner and means contained in Count One, paragraphs Twelve and Thirteen, and are incorporated by reference herein.

**THE WIRE COMMUNICATIONS**

19.   On or about the following dates, in Orange County, Florida, in the Middle District of Florida, and elsewhere,

**FRANK L. AMODEO**

the defendant herein, having devised and intending to devise, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted a wire transfer of money by means of wire communications in interstate commerce signs, signals, pictures and sounds for the purpose of executing such scheme to defraud and injure said clients of the PEOs controlled by defendant.

| Count | Date | Point of Origin | Point of Reception | Description |
|---|---|---|---|---|
| 11 | 12/13/04 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | AQMI Strategy Corp., Regions Bank, f/k/a AmSouth Bank, Acct No. 55292976 | Wire Transfer of $1,410,375.52 |

19

| Count | Date | Point of Origin | Point of Reception | Description |
|-------|------|-----------------|--------------------|-------------|
| 12 | 12/20/04 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | AQMI Strategy Corp., Regions Bank, f/k/a AmSouth Bank, Acct No. 55292976 | Wire Transfer of $1,284,986.58 |
| 13 | 6/10/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,000,000 |
| 14 | 6/17/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,000,000 |
| 15 | 7/22/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,500,000 |
| 16 | 7/29/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,500,000 |
| 17 | 11/2/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,500,000 |
| 18 | 11/28/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,500,000 |
| 19 | 1/9/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Nexia Strategy Corp., Bank of America, Acct No. 5502778055 | Wire Transfer of $1,000,000 |
| 20 | 2/14/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Presidion Solutions, Inc., SunTrust Bank, Acct No. 100041146787 | Wire Transfer of $2,000,000 |
| 21 | 3/17/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Presidion Solutions, Inc., SunTrust Bank, Acct No. 100041146787 | Wire Transfer of $1,300,000 |
| 22 | 4/21/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Presidion Solutions, Inc., SunTrust Bank, Acct No. 100041146787 | Wire Transfer of $700,000 |

| Count | Date | Point of Origin | Point of Reception | Description |
|-------|------|-----------------|--------------------|-------------|
| 23 | 5/15/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Titanium Technologies, SunTrust Bank, Acct No. 1000046738380 | Wire Transfer of $1,500,000 |
| 24 | 5/19/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Wellington Capital, Mercantile Bank, Acct No. 7600303414 | Wire Transfer of $500,000 |
| 25 | 7/28/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Mirabilis Ventures, Inc., Bank of America, Acct No. 5560763125 | Wire Transfer of $250,000 |
| 26 | 12/11/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Tenshi Leasing, Inc., Bank of America, Acct. No. 5560769378 | Wire Transfer of $500,000 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY-SEVEN
### (Obstruction of an Agency Investigation)

20.     Count One, paragraphs One through Ten, are hereby re-alleged and incorporated by reference as though fully set forth herein.

21.     From in or about January 2005, through in or about August 2006, in the Middle District of Florida, and elsewhere,

### FRANK L. AMODEO

the defendant herein, did corruptly influence, obstruct, and impede, and did endeavor to corruptly influence, obstruct, and impede, the due and proper administration of the law in the Internal Revenue Service collection of payroll taxes owed to the Internal Revenue Service by the Sunshine Companies, then pending with said agency, in that defendant

**FRANK L. AMODEO** and co-conspirators provided false information, or failed to provide information which was material for said investigation, to the Internal Revenue Service revenue officers involved in the collection of said payroll taxes, that is to say:

a.      Defendant **FRANK L. AMODEO** and co-conspirators knowingly failed to remit to the Internal Revenue Service payroll taxes totaling approximately $181,810,518.66, including approximately $129,655,309.04 in FICA and withholding taxes (also referred to as trust fund taxes), for Sunshine Companies III (4th quarter, 2004); Sunshine Staff Leasing (4th quarter, 2004); PBS (2nd, 3rd and 4th quarters, 2005; 1st, 2nd, 3rd and 4th quarters, 2006).

b.      Revenue officers of the Internal Revenue Service were conducting an investigation into the failure to remit payroll taxes owed to the Internal Revenue Service by the Sunshine Companies and were attempting to collect said payroll taxes.

c.      It was material to this investigation to determine whether the payroll taxes of the Sunshine Companies were capable of being paid and whether the payroll taxes were being used to pay operating expenses.

d.      Defendant **FRANK L. AMODEO** and his co-conspirators misled, impeded and misdirected the revenue officers as a result of the following acts, among others:

i.      On or about June 26, 2006, a co-conspirator advised an Internal Revenue Service revenue officer that payroll tax money not paid to the Internal Revenue Service was used to purchase two other companies, when, in fact, the money was used to purchase, among other things, several companies, cars, a plane and real estate.

    ii.    On or about July 20, 2006, defendant **FRANK L. AMODEO** and a co-conspirator met with Internal Revenue Service representatives and gave a false explanation concerning the shortfall of payroll taxes.

    iii.    On or about August 29, 2006, Defendant **FRANK L. AMODEO** and co-conspirators met to conduct a "mock deposition" of defendant **FRANK L. AMODEO** to "prepare" him for a meeting with Internal Revenue Service revenue officers.

All in violation of Title 18, United States Code, Sections 1505 and 2.

## FORFEITURE

1.    The allegations contained in Counts One and Eleven through Twenty-Six of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.    From his engagement in the violations alleged in Counts One and Eleven through Twenty-Six of this Indictment, the defendant

### FRANK L. AMODEO

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all of his interest in any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

3.   The specific property to be forfeited includes, but is not limited to:

a.   A forfeiture money judgment in the amount of $181,810,518.66, which constitutes proceeds obtained directly or indirectly as a result of the conspiracy to commit wire fraud charged in Count One, and/or the wire fraud charged in Counts Eleven through Twenty-Six. The net proceeds of any asset forfeited as property constituting or traceable to proceeds of the offenses charged herein shall be credited in partial satisfaction of the money judgment.

b.   The real property, including all improvements thereon and appurtenances thereto, located at:

(1)   614 Lake Avenue, Orlando, Florida;

(2)   709 Euclid Avenue, Orlando, Florida;

(3)   1159 Delaney Avenue, Orlando, Florida;

(4)   3801 Carolina Avenue, Richmond, Virginia;

(5)   4905 Research Drive, Huntsville, Alabama;

(6)   102 West Whiting Street, Tampa, Florida; and

(7)   The proceeds of the sale of 509 Riverfront Parkway, Chattanooga, Tennessee, currently held in the bankruptcy estate of Winpar Hospitality Chattanooga, LLC, Case No. 07-11908, U.S. Bank. Court, E.D. Tenn.

c.   The following vehicles:

(1)   2006 Black Harley Davidson Motorcycle, VIN # 1HD1BWB156Y077592;

(2)   2006 Mercedes Benz CLS 500C Coupe, VIN # WDDDJ75X46A032858; and

(3)   2006 BMW 750Li, VIN # WBAHN83536DT30059

d.     Gates Learjet Model 25D, Aircraft Number 4488W;

e.     The following promissory notes:

(1)    A promissory note in the amount of $3,500,000.00 dated on or
about May 7, 2007 between Wellington Capital and Worker's
Temporary Staffing, Inc., including payments of $63,000.00
per month; and

(2)    A promissory note in the amount of $5,500,000.00 dated on or
about May 27, 2007 between Mirabilis Ventures, Inc. and
Conrad D. Eigenmann, Jr., including semi-annual payments of
at least $100,000.00.

f.     The following seized funds:

(1)    $253,487.45 in proceeds seized from the trust account of the
law firm of Balch Bingham LLP;

(2)    $101,393.86 in proceeds seized from the trust account of the
law firm of Shutts & Bowen;

(3)    $42,419.72 in proceeds seized from the trust account of the
law firm of Mateer and Harbert;

(4)    $100,000.00 in proceeds seized from the trust account of the
law firm of Maher, Guily, Maher PA;

(5)    $105,922.96 in proceeds seized from the trust account of the
law firm of Martin, Pringle, Oliver, Wallace, & Baur LLP;

(6)    $50,000.00 in proceeds seized from the trust account of the
law firm of Bieser, Greer & Landis LLP;

(7)    $8,518.30 in proceeds seized from the trust account of the law
firm of Allen, Dyer, Doppelt, Milbrath & Gilchrist PA;

(8)    $25,000.00 in proceeds seized from the trust account of the
law firm of Valenti, Hanley & Robinson PLLC;

(9)     $10,000.00 in proceeds seized from the trust account of the law firm of Brown, Stone, & Nimeroff LLC;

(10)    $21,900.00 in proceeds seized from the trust account of the law firm of Hunt Rudd PA;

(11)    $41,029.54 in proceeds seized from the trust account of the law firm of Ford & Harrison PA;

(12)    $12,528.51 in proceeds seized from the trust account of the law firm of Broad & Cassel;

(13)    $20,754.19 in proceeds seized from the trust account of the law firm of Latham, Shuker, Barker, Eden, & Beaudine LLC; and

(14)    $13,100.99 in proceeds seized from Fifth Third Bank Account No. 7440599020 in the name of Soone Business Development.

g.    The assets of the following corporations, including but not limited to the below listed lawsuits and/or settlements:

Corporations:

AEM, Inc., d/b/a Mirabilis HR,
AQMI Strategy Corporation,
Hoth Holdings, LLC,
Mirabilis Ventures, Inc.,
Nexia Strategy Corporation,
Presidion Solutions, Inc.,
Professional Benefit Solutions, Inc.,
        d/b/a Presidion Solutions VII, Inc.
Quantum Delta Enterprises, Inc.,
        d/b/a Siren Resources, Inc.,
Titanium Technologies, Inc.,
        f/k/a Titanium Consulting Services, Inc.,
Tenshi Leasing, Inc.
Wellington Capital Group, Inc.

26

Lawsuits:

| Style of case | Location | Case No. |
|---|---|---|
| Mirabilis Ventures, Inc. v. Jeffrey Reichel | Broward County, Florida | CACE 07011827 |
| Mirabilis Ventures, Inc, and Nexia Strategy Corp. v. Palaxar Group, LLC, et al. | Orange County, Florida | 07-co-13191 (37) |
| Mirabilis Ventures, Inc. v. Forge Capital Partners, LLC, et al. | Orange County, Florida | 07-CA-13828 (33) |
| Mirabilis Ventures, Inc. v. J.C. Services, Inc., et al. | U.S.D.C., M.D. Fl. | 6:06-cv-1957-Orl-22KRS |
| AEM, Inc. d/b/a Mirabilis HR v. Sheryl Okken, Progressive Employer Services, LLC, et al. | Brevard County, Florida | 05-2007-CA-006526 |
| RKT Constructors, Inc. v. Del Kelley and Robi Roberts | Orange County, Florida | 2007-CA-012599-0 |
| Mirabilis Ventures, Inc. v. Stratis Authority, Inc., et al. | Orange County, Florida | 07-ca-13826 (37) |
| Mirabilis Ventures, Inc. v. Premier Servicing, LLC and Robert Konicki | Orange County, Florida | 07-ca-33197 (34) |
| Mirabilis Ventures, Inc. v. Robert Lowder, et al. | Orange County, Florida | 2006-CA-005742-0 |
| Kenneth Hendricks, et al. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | U.S.D.C., M.D.Fl. | 8:07-cv-661-T17EAJ |
| Kenneth Hendricks, et al. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | Hillsborough County, Florida | DC-07-014201J |

| Style of case | Location | Case No. |
|---|---|---|
| Berman, Kean & Riguera, P.A. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | Broward County, Florida | 07-024968 (21) |
| Anthony T. Sullivan v. AQMI Strategy (Counterclaim) | Orange County, Florida | 07-CA-0015981-0 |
| Paysource, Inc. And Robert Sacco v. Mirabilis Ventures, Amodeo, et al. (Counterclaim) | U.S.D.C., S.D. Ohio | 3:07cv0129 |
| Prime Acquisition Group, LLC v. Ionic Services, Inc., et al. (Counterclaim) | Palm Beach County, Florida | 502007CA02242 |
| Michael Mapes, et al. v. Wellington Capital Group, Inc. | U.S.D.C., D. Neb. | 8:07cv77 |
| Briarcliff Village, LLC v. Mirabilis Ventures, Inc. | Clay County, Missouri | 07CY-CV09414 |
| William Gregory v. Floyd Road v. Mirabilis Ventures, Inc. (Counterclaim) | Hillsborough County, Florida | 07-CA-010780 |
| Coastal Equity Partners, LLC v. Pacific Atlantic Capital Corp., et al. (Counterclaim) | Henrico County, Virginia | CL07-1960 |
| Liberty Property Limited Partnership v. Mirabilis Ventures, Inc., et al. (Counterclaim, settled) | Duval County, Florida | 162007CA003642 |
| Tranmere Rovers Football Club v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Liverpool, England | 7LV30022 |
| Mark Lang v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Orange County, Florida | 48-2007-CA-002929-0 |

| Style of case | Location | Case No. |
|---|---|---|
| David Chaviers, Norman Chaviers, Kellie Ledbetter and Tom Hancock v. Mirabilis Ventures, Inc. And Frank Amodeo, et al. (Counterclaim, settled) | U.S.D.C., N.D. Ala. | CV-07-0442-cls |
| Carlton Fields v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Hillsborough County, Florida | 07-CC-038145 |
| Brevard County v. RKT Constructors, Inc. (Counterclaim, settled) | Brevard County, Florida | 05-2007-CA-12251 |
| Bellsouth v. RKT Constructors, Inc., et al. (Counterclaim, settled) | Orange County, Florida | 05-2007-CA-9660-0 |
| Dutko Global Advisors LLC v. AQMI Strategy Corporation (Counterclaim, settled) | Orange County, Florida | 48-2007-CA-018164-0 |
| Capital Office Products of Volusia County, Inc., v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Volusia County, Florida | 2007-34950 COCI |
| CDW Corporation, Inc. v. Information Systems, Inc. (Counterclaim, settled) | Cook County, Illinois | 2007-L-002446 |
| RKT Constructors, Inc. v. Florida Department of Transportation (Settled) | Broward County, Florida | 05-2003-CA-047397 |
| RKT Constructors, Inc. v. Florida Department of Transportation (Settled) | Broward County, Florida | 05-2006-CA-060518 |

| Style of case | Location | Case No. |
|---|---|---|
| Providence Property & Casualty Insurance Co, et al. v. Paradyme, Inc., d/b/a Presidion Solutions VI (settled) | U.S.D.C., E.D. Tx. | 4:07-CV-202 |
| Presidion Corporation v. Arrow Creek, Inc., et al. | Palm Beach County, Florida | 502006CA001417xxxxMB |

      h.     Any and all property of the following bankruptcy estates, including funds which now constitute or have constituted funds of the estate:

| Style of case | Location | Case No. |
|---|---|---|
| In Re: Winpar Hospitality Chattanooga, LLC. | U. S. Bankruptcy Court, E.D. Tenn. | 07-11908 |
| Sam Hopkins, Trustee v. Todd Pattison and Mirabilis Ventures, Inc. | U. S. Bankruptcy Court, D. Idaho | 08-08005-JDP |
| In Re: Mirabilis Ventures, Inc. | U. S. Bankruptcy Court, M.D. Fl. | 6:08-bk-04327-KSJ |
| In Re: Hoth Holdings, LLC | U. S. Bankruptcy Court, M.D. Fl. | 6:08-bk-04328-KSJ |
| In Re: AEM, Inc. | U. S. Bankruptcy Court, M.D. Fl. | 6:08-bk-04681 |
| In Re: North American Communications | U. S. Bankruptcy Court, D. Utah | 2:07-bk-24900 |

      4.     If any of the property described above, as a result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided

        without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the

provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c).

A TRUE BILL,

_____
Foreperson
Dominic Lorenti Jr

ROBERT E. O'NEILL
United States Attorney

By: _____

Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

By: _____

I. Randall Gold
Assistant United States Attorney
Deputy Chief, Orlando Division

FORM OBD-34
APR 1991

No.

# UNITED STATES DISTRICT COURT
## Middle District of Florida
## Orlando Division

THE UNITED STATES OF AMERICA

vs.

FRANK L. AMODEO

## INDICTMENT

Violations:

18 U.S.C. § 371
18 U.S.C. § 1343
18 U.S.C. § 1505
26 U.S.C. § 7202
18 U.S.C. § 981(a)(1)(C) - Forfeiture
28 U.S.C. § 2461(c) - Forfeiture

A true bill,

_____
Foreperson

Filed in open court this 6th day

of August, A.D. 2008.

_____
Clerk

Bail $_____

GPO 863 525

Revised 05/03/2007