UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED

United States of America

v.                                                          Case No. 6:08-cr-176-Orl-28GJK

Frank L. Amodeo

_____/

### NOTICE OF FILING AFFIDAVIT, EXHIBITS AND MEMORANDUM

Comes Now Frank L. Amodeo and files this notice of filing Amodeo's affidavit, corroborating exhibits and memorandum of law and fact.

Amodeo initially apologizes for having to submit the memorandum unedited in draft form.  This has occurred because Amodeo has been deprived of counsel and is incarcerated.

Absent counsel, Amodeo was forced to act pro se and the prison lacks the word processing equipment necessary to prepare documents of this complexity.

Amodeo also lacks the skills for use of ordinary typewriters; therefore, Amodeo is forced to mail the documents outside of the prison to be typed.

Accordingly, the delay can be as long as fourteen days because of the prison's mail policies.

Because of possible time constraints as a result of the unusual posture of the matter, Amodeo is filing the draft documents out of an abundance of caution to ensure timeliness.

Amodeo anticipates being able to edit and review the documents, in their entirety, by October 26, 2009.

At which time, Amodeo shall submit a completed, typewritten and word processed version to the Court and interested parties.

Amodeo's affidavit addresses events leading up to the plea and conviction.

Amodeo's exhibits include the addendam inadvertently omitted in the Statement of Facts filed in objection to PSI and other exhibits to corroborate both the Statement of Facts and Affidavit.

It is important to note the Statement of Facts has certain revisions in order to accurately reflect Amodeo's recollection - in the

o

prior statement certain "facts" were included in order to not offend the Government's sensibilities even though the facts were

untrue

Amodeo's memorandum will address the following issues when complete:

1. Actual innocence of the crimes charged in the indictment;

2. Actual innocence and lack of factual predicate for the guilty plea;

3. Lack of competency to enter the plea or participate in the plea process;

4. Lack of legal capacity to have executed the plea;

5. That the plea was not knowingly and voluntarily entered because of:

   (A) Unfulfilled Government Promises;

   (B) Ineffective Assistance of Counsel because of prejudicial advice or lack of advice;

   (C) Ineffective Assistance of Counsel because of an actual conflict; and

   (D) Defendant was uninformed of the nature of the charges.

6. An analysis of why the plea agreement is invalid pursuant to contract principles;

7. Prosecutorial errors or misconduct which warrant cancellation of the plea or dismissal of the indictment including

suppression of Brady material;

8. Structural errors resulting from Amodeo being deprived of counsel at sentencing and afterwards;

9. Selective prosecution or disparity in treatment;

10. Consequence of Court interference with presentation of defence through Court ordered medication; and

11. An analysis of constitutional and public policy violations resulting from the actual implementation of the plea process

as opposed to the hypothetical plea process.

Amodeo hopes the Court will mitigate the damage caused by Amodeo being forced to proceed without counsel; by promptly

appointing a competent, skilled counsel to assist in this matter.

Respectfully submitted this _____ day of October 2009.

Frank L. Amodeo
Federal Correction Complex-Low
P.O. Box 1031
Coleman Florida 33531

CERTIFICATE OF SERVICE

A copy of the foregoing notice has been served upon I. Randall Gold by United States Mail Service this __14__ day of October 2009 at 501 W. Church Street, Suite 300, Orlando, Florida 32805.

Frank L. Amodeo

Out of an abundance of caution because of the unwieldly mail system in and out of the prison. Amodeo submits the following draft memorandum in support of Issues 5 (A), (B), (C), (D) set out in this notice.

A final version of the memo addressing all eleven issues to be completed by October 26, 2009.

5. A   Unfulfilled Government Promises
   B.   Ineffective Assistance of Counsel because of Prejudicial Advice
   C.   Ineffective Assistance of Counsel because of Actual Conflict
   D.   Failure to Understand the Charges or Consequence of the Plea



## GOVERNMENT'S FAILURE TO FULFILL PROMISES (S,A)

The government made a series of promises to Amodeo to induce Amodeo's cooperation during the investigation.

The government promised by May 2007; over 15 months before the plea that Amodeo would get a "Tampa letter" for the assistance Amodeo had already provided including but certainly not limited to seven undercover operations.

A "Tampa letter" was necessary because AUSA Gold only had the authority to grant a four level reduction while with a Tampa letter Amodeo could receive up to 10 level reduction.

The government made clear Amodeo would not be expected to testify just to collect and organize the evidence plus explain the various technical matters arising out of extremely complex situation.

Between the time of this initial promise and the time of the plea Amodeo not only organized and collected millions of documents and more than a terabyte of electronic data but also located and recovered 27,000 hours of audio and video recordings from the surveillance cameras which recorded most of the public areas and conference rooms in the various companies' offices.

By the government's own admission Amodeo met with them dozens and dozens of time between the May-promise and sentencing.

In addition to the "Tampa letter" the government also committed that Amodeo was to get credit for all the funds recovered and remitted to the government.

This promise took place the same time Lou Pearlman was granted a one month reduction in the sentence for each million dollars paid and Amodeo was lead to believe the arrangement would be at least as good as Pearlman's if not better.



Amodeo has assisted in the collection of tens of millions of dollars with tens of million more if not a hundred million still in process.

Absent these promises Amodeo would have had no reason to spend three years and millions of dollars assisting the government's investigation and collection; nor would Amodeo have agreed to plea guilty to something Amodeo did not believe Amodeo did if Amodeo knew the government would renege on the government's promises.

Finally, at the time of the plea agreement the government made four additional promises. The government promised Amodeo would receive a three level reduction for the acceptance of responsibility, Amodeo would be permitted to argue for substantial assistance than the four levels AUSA Gold could authorize, Amodeo could present the mitigation evidence resulting from Amodeo's mental illness and Amodeo would be permitted all the time necessary at sentencing to present Amodeo's view of the facts including clarifying those set forth in the plea agreements, absent these promises Amodeo made it clear Amodeo would not enter into any type of plea agreement.

The government did not fulfill these promises the government did not file a 5K.1 motion thus precluding Amodeo from arguing for the substantial assistance.

The government did not consent to an extended proceeding to allow Amodeo to present Amodeo factual case, the government tried to eliminate Amodeo acceptance of responsibility and did get it reduce to two levels instead of three.

Further the government made sure Amodeo received no benefit from the acceptance by having it apply to the hypothetical sentence in the PSI which was above the statutory cap for the crimes even after taking into account the 2 level reduction.

The government also did not agree to extend sentencing hearing to permit the psychiatric experts from McLean Hospital and Harvard to and testify to the extent of Amodeo's mental illness.

Including within this testimony would have been significant facts, which based upon the Court's subsequent comments would have had significant impact on the sentencing decision:

1.) **Amodeo like any bipolar when in the midst of the disorder does not recognize they are sick. Absent outside intervention a bipolar like Amodeo will not seek help;**

2.) **Because of a pervasive chronic depression underlying the mania Amodeo would never have been able to focus on or comprehend the memorandum; and**

3.) **Amodeo, as all manics, becomes oblivious to reality and interpret the actions and conduct of Amodeo advisors as affirming of Amodeo's actions and delusions.**

The government failed to fulfill either the government's preplea promises or the government's additional promises used to induce Amodeo into entering a guilty plea after the indictment. Absent benefits of these promises Amodeo would not have entered a guilty plea.

The Supreme Court, the Eleventh Circuit and the other Appellate Courts have made it crystal clear that the government must fulfill any promises made to induce or as part of a plea agreement.



Marchibroda v. United States, 368 U.S. 487, 7 L.Ed. 2d 473, 82 S.Ct. 510 (1962); Memba v. Rhay, 389 U.S. 487, 19 L.Ed. 2d 336, 88 S.Ct. 254 (1967); Santabello v. New York, 404 U.S. 257, 30 L.Ed. 2d 427, 925 S.Ct. 495 (1971); Blackledge v. Allison, 52 L.Ed. 2d 136, 97 S.Ct. 1621 (1977); U.S. v. Kerdachi, 756 F.2d 349 (5th Cir. 1985); U.S. v. Kurkculer, 918 F.2d 295 (1st Cir. 1990); U.S. v. Jones, 58 F.3d 688 (D.C. Cir. 1995); San Pedro v. United States, 79 F.3d 1065 (11th Cir. 1990); U.S. v. Aleman, 286 F.3d 86 (2nd Cir. 2002); U.S. v. Dudden, 65 F. 3d 1461 (9th Cir. 1995).

In addition, the Courts are to analyze it from the understanding of the defendant, United States v. Taylor, 77 F.3d 368 (11th Cir. 1996); United States v. Boatner, 966 F.2d 1575 (11th Cir. 1992); Smith v. Blackburn, 785 F.2d 545 (5th Cir. 1986); United States v. Horsfall, 552 F.3d 1275 (11th Cir. 1992); United States v. Harvey, 869 F.2d 1439 (11th Cir. 1989); United States v. Weiss, 599 F.2d 739 (5th Cir. 1979); Bernis v. United States, 30 F.3d 220 (1st Cir. 1994).

Furthermore, even the the Defendant has been shown to be competent which is certainly not the case with Amodeo and the Defendant has admitted the plea is freely entered it is not sufficient to limited the analysis to such admissions. Blackledge v. Allison, 431 U.S. 63 (1977); Martin v. Kemp, 760 F.2d 1244 (11th Cir. 1985); Kercheval v. United States, 274 U.S. 220, 71 L.Ed. 1009, 475 S.Ct. 582 (1927).

In this instance, Amodeo's ~~had~~ ~~will~~ understanding of the government's promises all which went unfulfilled or the benefit was illusory. Absent such promises not only would Amodeo not

only would Amodeo not have agreed to plea guilty, Amodeo's attorneys would not have recommended Amodeo enter a guilty plea.

Where the government fails to fulfill the promise made to a defendant a plea is void and should be vacated.

The government failed to fulfill many promises to Amodeo thus the plea agreement should be cancelled, withdrawn, and vacated.

## Ineffective Assistance of Counsel (Issue 5.B):

A plea agreement is not valid when the defendant does not enter the plea knowingly and voluntarily. United States v. Ruiz 153 L Ed 2d 586 (2002); Boykin v. Alabama 395 US, 238 (1969); Stano v Dugger 921 F 2d 1125 (11th Cir 1991)

Whether a plea was voluntary depends on the particular advice of counsel was ineffective and meets the two prong test set forth by the Supreme Court in Strickland v. Washington 466 US 668, 80 L Ed 2d 674, 104 S Ct 2052 (1984).

The two prong test is: that counsel's representation fail below an objection standard of reasonableness and but for counsel's errors the defendant would have gone to trial. Strickland supra; U.S. v Streamer 70 F 3d 1314 (D.C. Cir 1995); Blalock v. Lockhart 898 F 2d 1367 (8th Cir 1990); Hill v Lockhart (1985) 474 US 52, 88 L Ed 2d 203 106 S. Ct. 366.

Several examples exist in this case of Amodeo's counsel providing advice which fail below an objective standard of reasonableness:

1) Amodeo's lead counsel advised Amodeo that based on the substantial assistance and mitigating factors Amodeo should



2

1) expect a sentence of two years if Amodeo enters a plea;

2) Amodeo should not go to trial because the government would suborn perjury in order to get Amodeo convicted;

3) That the conspiracy charge and wire fraud charge did not contain any elements involving specific intent or willfulness; and

4) the Amodeo's attorneys failed to inspect, review or even request the government produce the evidence the government had indicating Amodeo's guilt

Amodeo's wife was told at the beginning of the government's investigation that Amodeo would get ten years if Amodeo cooperated and twenty years if Amodeo did not cooperate. This information was provided by a member of the U.S. Attorney's Office.

When Amodeo approached Amodeo's lead counsel with this information. Amodeo's counsel "shook his head" reminded Amodeo of his considerable expierence including approximately



3

eighteen acquittals at trial. Amodeo's counsel then held up to fingers and said two years that is what you should expect. Over a year later Amodeo's counsel pointed out how accurate Amodeo's counsel's other predictions had been and that because of the substantial assistance and other mitigating factors the predicted sentence would also come to pass.

Had Amodeo known the advice was so far off the mark 270 months instead of 24 months, Amodeo would not have entered a ~~plea agreement~~ guilty plea but instead gone to trial.

Many courts have determined it is objectively unreasonable for defense counsel to grossly underestimate a defendant's sentencing exposure. Watson v. United States 2009 US App. LEXIS January 21, 2009 ; United States v Gordon 156 F. 3d 376 (2nd Cir 1998).

Amodeo was told by Amodeo's defense ~~counsel~~ attorneys, in particular Brian Phillips that Amodeo needed to plead guilty because the government would suborn perjury and use it against Amodeo at trial.

Further, Phillips told Amodeo by ~~pleading~~ pleading guilty Amodeo was not actually



4

admitting guilt but only admitting what the government could prove at trial even if it involved using perjured testimony.

Even if Phillips was correct and the government's attorneys would engage in such illegal and unethical actions.

The appropriate advice an attorney would have objectively provided to Amodeo would not be to plead guilty to a crime Amodeo did not commit but instead to challenge the indictment and conviction based on the prosecutorial misconduct.

A prosecutor may not make material misrepresentations. <u>Davis v. Zant</u> 36 F3d 1538 (11th Cir 1994); Prosecutors must not allow inaccuracies to be presented to the court. <u>United States v. Black</u> 660 F 2d 1086 (5th Cir Unit B 1981); Threats against witnesses are presumed misconduct. <u>United States v Schlei</u> 122 F 3d 944 (11th Cir 1997); <u>United States v. Torzado-Madrego</u> 897 F 2d 1091 (11th Cir 1990); <u>Demps v. Wainwright</u> 805 F. 2d 1426 (11th Cir 1986)

Amodeo's attorneys specifically told Amodeo the wire fraud count and the obstruction count did not ~~make spec~~ have

5

elements involving specific intent or wilfulness

This information is completely inaccurate. In order to obtain a conviction for wire fraud the government must show the Defendant's intential participation in a scheme to defraud. States v. Ross 131 F.3d 970 (11th Cir 1997). Intentional misrepresentation Neder v. United States 527 US 1, 119 S.Ct 1827, 144 L. Ed 2d 35 (1999); United States v. Brown 7, F 3d 1330 (11th Cir 1996)

no underline

In order to be convicted of a conspiracy to interfer with an agency or investigation, it must be shown that an agreement exists among two or more persons, that the person knew the general purpose of the agreement and the 'defendant knowingly and voluntarily participated in the agreement. United States v. Hugh 117 F.3d 464 (11th Cir 1997).

A modeo adamantly held to the position Amodeo was unaware any person was committing a crime. Amodeo's beliefs were corroborated by four seperate polygraph examinations. Amodeo only admitted to directing a wire with knowledge in January of 2007. Had Amodeo's counsel or the Court explained the elements of the charged conduct involved volitrenal, intentional conduct Amodeo would not have plead guilty and instead gone to trial.

6

A tactical or strategic decision is unreasonable if it is based on a failure to understand the law. Horton v. Zant 941 F.2d 1449 (11th Cir 1991)

---

The government had within the government's possession the statements from various witnesses which ~~tend to be~~ did corroborate Amodeo's version of the facts

Including that the deferment of taxes was widely disclosed within the various companies and to the accountants and attorneys employed to render advice on the strategy. This evidence reveals contrary to the assertions of Amodeo's defense attorneys that the witnesses were telling the truth and the testimony was exculpatory of Amodeo. Had this evidence been examined before the plea agreement or even before sentencing, Amodeo would not have been misled into believing all the witnesses could be made to lie and chosen to go to trial instead of pleading guilty. Further Amodeo pled guilty to three counts of nonpayment of payroll

taxes pursuant to ___ USC §7202. Leaving aside defense counsel's lack of understanding of how the requirement of specific intent applies to the fact pattern, counsel made an even greater error.

Amodeo was told to plead guilty to the tax accounts because specific intent could be shown through wilfull blindness, and wilful blindness could be proved through reckless disregard.

In Amodeo's case reckless disregard occurred because Amodeo failed to read a legal memorandum produced by Richard Berman's law firm Berman, Kean and Riguera.

At this time Berman was full time general counsel of Mirabilis Ventures Inc. as well as a member of the Board of Directors. Mirabilis was the principal enterprise in virtually all the transaction involved in the charges.

Amodeo did not read the memo when presented to Amodeo in or about February 2006, returning the memo to Berman and telling him to distribute it to the Board of Directors. Amodeo was not a board member.

This action on the part of Amodeo



8

is what Amodeo did that Amodeo's attorneys believed was sufficiently reckless to rise to a legal determination of wilful blindness.

Amodeo's attorneys told Amodeo if Amodeo had read the memo it would have informed Amodeo that nonpayment was illegal even if truthfully reported to the IRS. No mention was made as to memo addressing the fact that a noncontrolling person, nondirector, nonofficer like Amodeo had a duty and was aware of the duty.

Based on the attorneys statement about what information the memo contained Amodeo was willing to admit it was reckless to not read the memo and simply follow the advice and action of Berman and the other professionals.

The objective failure of Amodeo's defense attorneys exist because they convinced Amodeo of this without ever having read the memo themselves.

As it turns out seven months after the plea was entered Kenton Sands, Esq. actually read the memo and insisted that Amodeo also finally read the memo.

The memo did not identify the



9

deferment or nonpayment of payroll taxes as illegal in fact it implicity confirmed that the conduct was legal. Nowhere in the memo did it identify a person in Amodeo's position as having a duty to pay the taxes.

Any reasonable criminal defense attorney would have read the key evidence against the defendant before advising their client to enter a plea.

Had Amodeo's defense counsel read the memo before the plea and told Amodeo what the memo stated, Amodeo would not have believed following the verbal advice of Berman and others was reckless and Amodeo would have never plead guilty.

An independent duty of investigation is required to have an effective counsel. <u>House v. Balkom 725 F.2d 608 (11th Cir 1984)</u>. Failure to understand the law is ineffective assistance of counsel. <u>Zant supra</u>. Where the attorney is so ill prepared he fails to understand his client's legal and factual issues, counsel fails to provide service within the reasonable range of competency. <u>Young v. Zant 677 F.2d 792 (11th Cir 1982)</u>





Any of the foregoing actions of the attorneys for Amodeo were sufficient to render the plea ~~involuntary invalid for~~ not knowingly and voluntarily entered. ~~These actions~~ taken Together, it is evident the activities were outside those expected of effective counsel so as to violate Amodeo's Sixth Amendment rights; ~~combined with the fact that except for these errors Amodeo regardless of Amodeo's competency would not have entered the plea and instead gone to trial~~

Without this ineffective assistance of counsel Amodeo nor any other sane person would have been willing to enter a plea of guilty.

(Issues.C) Ineffective Assistance of Counsel: Actual Conflict

The courts have made it clear that a defendant is entitled to conflict free representation in criminal cases. Burden v. Zant 871 F2d 956 (11th Cir 1989). When a conflict exists between Defense counsel and client a situation occurs where it is possible that prejudice is so likely the two prong test of Strickland is not applicable. Florida v. Nixon 543 US 175, 125 S. Ct. 551, 160 L. Ed 2d 565 (2004); United States v. Cronic 80 L. Ed 2d 657 (1984); Bell v. Cone 535 US. 685, 122 SCt. 1843, 152 L. Ed 2d 914 (2002)

In this case counsel for Amodeo had a variety of actual conflicts which were so pervasive from the beginning of the case to conclusion as to render the counsel ineffective for actual conflict.

(1) Harrison Slaughter the lead defense counsel was one of nearly forty professionals in attendance at a "town hall" style meeting where Amodeo explained in no uncertain terms the payroll taxes were being used to fund other expenses than the taxes. This event specifically underlies one



2

(1) one of the counts of conviction;

(2) Mr. Slaughter and other members of the defense team were paid nearly 1.5 million dollars most of it directly from corporations ultimately indicted by the government. The AUSA threaten to seize the fees unless "Amodeo signs a plea without making any changes.";

(3) Mr. Slaughter was given a financial interest in certain civil cases of Amodeo. The possible fees are between $500,000 and $5,000,000. The civil attorneys would only take the case on contingency if the government affirmed the contract. The government would only affirm the contract if Amodeo pled guilty.; and

(4) Mr. Slaughter and the entire defense team because openly con-



3

(4) cerned that if a plea was not entered then the Court would require them to continue to represent Amodeo because of the length of time involved and the amount of money paid. The concern was that since the government claimed Amodeo's fees were tainted they would have to conduct a possible year long trial without additional payment

After the plea was entered this concern became more pronounced when Amodeo requested the plea be withdrawn. Counsels already having entered an appearance were now almost certainly going to be required to continue the representation even without further compensation.

In each everyone of the foregoing events an actual conflict exists between the attorney and client. The attorney should have immediately ceased representation of the client and if required



4

sought Court permission to withdraw.

In the first instance Mr. Slaughter's presence had at the "Mock Deposition" made Mr. Slaughter a material witness to the event.

In addition, Mr. Slaughter, a criminal tax law expert, heard the ~~story~~ answers Mr. Amodeo gave and did not suggest to Mr. Amodeo that the conduct was criminal for over ninety days. Thus Mr. Slaughter's permitting Amodeo his client to continue this activity; not to mention accepting hundreds of thousands of dollars in fees would suggest Amodeo at the very least has a reliance on advice (or nonadvice) of counsel defense and in the worst case the government could have included Mr. Slaughter has part of the conspiracy.

Either has a defense for Amodeo or part of the conspiracy could have created a burden on Slaughter including loss of over $600,000 in fees. As such the matter was swept under the rug by the plea agreement.

In the second matter AUSA Gold sent Slaughter an email in March 2008 stating that amongst other penalties, the government would not protect Slaughter's, Panoff's or Phillip's fees



5

unless "Amodeo signed a plea agreement without changes." Immediately, upon receipt of such email the interests of Amodeo's attorneys and Amodeo became polarized. Defense counsels in order to protect over a million dollars in direct fees now needed to pressure their mentally ill client into entering a plea; even though Amodeo continued to assert Amodeo's innocence and Amodeo's civil attorneys corroborated Amodeo's view of the facts which supported Amodeo's innocence.

Third, Amodeo brought certain civil actions against the accounting firm and law firm which advised Amodeo that it was legal to utilize the deferred taxes to fund the reorganization plan.

The ~~attorneys~~ civil attorneys bringing these actions were referred by Slaughter and Slaughter was given a five percent forwarding fee which was acknowledged by the government.

The civil attorneys were hesitant to proceed until the government agreed to affirm the contract. In this way the attorneys would be assured the government would not come after the civil fee award.

The government provided various oral



6

assurances but refused to provide written affirmation that the agreement was acceptable until after Amodeo entered a guilty plea.

It is axiomatic when an attorney's personal financial interest runs contrary to a client's legal interest their exists an actual conflict which taints not only the appearance of zealous representation but the effectiveness of counsel's advice.

The existence and extent of this strange relationship between the United States and Amodeo's attorneys became apparent when the government settled an unrelated issue with the Mirabilis bankruptcy estate.

As a condition to a stipulated resolution of a controversy in the bankruptcy action, the government required the estate to not attempt to recover any monies from Amodeo's defense attorneys.

This even though those monies were paid by the Debtor within the preference or avoidable conveyance period.

The government honored the government's bargain with Amodeo's defense attorneys: Get the "crazy man" to make a plea and you can keep the million-plus already received and the future contingency



7

fees.

The fourth area of conflict not only involves Amodeo's particular case but all cases where an attorney is appointed or hired and there exists a limited budget for legal fees.

Amodeo's attorneys received significant fees paid-in-advance; thereafter Amodeo's attorneys had every incentive to get Amodeo to enter a plea this would save the attorneys the need to review the governments evidence, to interview witnesses, to prepare pretrial motions, to attend pretrial proceedings the need to prepare for trial, the need to actually try the case (9 to 12 months) and all the attendant post trial issues.

Simply, Amodeo's attorneys got a much bigger loan for the buck by having Amodeo enter a plea than go to trial. This incentive insidiously tainted their conduct, perceptions and advice.

In particular the attorneys never requested the government produce any evidence including Brady materials, the attorneys never interviewed individuals like Brian Taylor, former senior supervisor of the FBI's New York City Organized Crime Task force, who was security chief for Amodeo and in charge of the internal antifraud program, failed to prepare the polygraph expert for giving testimony



etc....    The prepayment of fees is based upon the supposed difficulty of withdrawing from a federal criminal case.

The fees are earned upon receipt because of the need to protect the payment from the attorney's subsequent knowledge that the fees are from an illegal source and the corresponding government seizure.

The consequence for Amadeo and others similarly situated is the creation of an intractable conflict between attorney and client. For the attorney less is better even if this is damaging to the client or against the client's instructions.

The existence of actual conflict renders an attorney's assistance ineffective without the required showing of prejudice. Florida v. Nixon, supra; Bell v. Cone supra; Wood v. Georgia 450 U.S. 261, 67 L Ed 2d 333 (1980).

The Sixth Amendment requires not only the provision of counsel but assistance which is to be for the accused's defense and which ensures "the prosecution's case survives the crucible of meaningful adversary testing." United States v. Cronic 466 US 648, 104 S.Ct. 2039, 80 L Ed 2d 657 (1984); Cuyler v. Sullivan 446 US 335, 64 L Ed 2d 333 (1980); Chandler Conklin

9

v. Schofield 366 F3d 1191 (11th Cir 2004); U.S. v
Novation 271 F.3d 968 (11th Cir 2001); ~~Coodin~~ Chandler
~~v. Schofield 366 F3d~~ v. United States 218 F3d
1305 (11th Cir 2000); Hembree v. United States
2009 US App LEXIS 900 (11th Cir 2009)

The existence of these actual conflicts
render Amodeo's counsel ineffective and requires
vacation of the guilty plea.



# Understanding the Charges and Consequences of the Plea
## (Issue 5.D)

In order for a conviction to be upheld the defendant must not only be competent to understand and appreciate the nature and consequences of the plea, but must also be reasonably informed of the charges against him and the factual basis underlying those charges as well as the legal alternatives available. Lo Conte v. Dugger 847 F.2d 745 (11th Cir 1988); Stinyard v. Dugger 1989 U.S. LEXIS 16,526 (11th Cir 1986)

back → Coleman v. Alabama 877 F.2d 1469 (11th Cir 1989)

This requires the defendant to understand not only the law, but the law in relation to the facts. U.S. v Guichard 779 F.2d 1139 (5th Cir 1986). United States v. James 210 F.3d 1342 (11th Cir 2000)

Amodeo was not informed as to the elements or increments by either Amodeo attorney or the court.

Amodeo was not informed that an essential element of each count was specific intent to enter into a scheme to defraud, intentionally and personally interfer or mislead an agency or wilfully fail to fulfill a personal duty.

Amodeo was informed that if any



person had such intent that intent could be imputed to Amodeo even if Amodeo was subjectively unaware of the fraud, misrepresentation or violation of the duty.

Amodeo has adamantly insisted Amodeo was not aware it was illegal to defer the payment of corporate taxes; so long as the tax returns were actually and truthfully filed.

Amodeo was never made aware, that Amodeo, who was not a "controlling person", director, officer, manager or employee of the corporations which did not pay their taxes, had any personal duty to ensure payment of the tax.

Amodeo was told that the wire fraud and obstruction charges did not have an element of specific intent, that simply having authorized a wire even without knowledge of the illegal conduct and fraudulent scheme was sufficient to be considered guilty.

Amodeo was told, even though the advice rendered by Curry at the "meet & position" was never relayed to the Internal Revenue Service, the advice could still be used to provide a basis for the interference count.

As it turns out these statements were



not accurate.

This inaccuracy explains the nervous of counsel and AUSA Gold at the change of plea hearing. Both realized Amodeo did not believe and would not admit to intentional mis-conduct.

Amodeo's attorney had Amodeo take an extra dose of medication while at U.S Attorney's Office before the hearing, including a dose of the stupefying Seroquel.

Amodeo was then coached as to how to answer the questions of the Court and warned about giving a factual narrative.

Amodeo was told at the sentencing hearing which would "take weeks and be spread over months" all the facts would be brought out and if the district court judge did not think the facts met the elements of the crime, the district court judge would reject the magistrate's recommendation that the plea be accepted.

The Court during the change of plea hearing never informed Amodeo of the elements of the crimes nor did counsel or the AUSA



Amodeo in addition to being drugged and ~~tired~~ in the midst of a bipolar cycle was without knowledge as to how the facts applied to the law.

Amodeo's admissions of fact had a different meaning to Amodeo than ~~the government~~ the meaning presented the Court.

Had Amodeo at the time not been medicated and given an opportunity to comply with Amodeo's Harvard psychiatristes instructions:

[Make] no significant life decisions without waiting <u>at least</u> three days to ensure that you have to reflect and stabilize your mood and judgment.

And provided with the actual elements of the crime, Amodeo would never bonserted to a guilty plea; nor, perpetration of the "fraud" on the court by submitting the "nonspecific conclusory" "intentionally vague statement of facts."

Amodeo would not have pled guilty if Amodeo had been aware of the criteria for fraud. "[T]here can be no fraud absent a duty to speak." <u>Unisted States v Chiarella 445 US 222 (1980);</u> <u>In re Charter Comm., Inc. v. Scientific-Atlantic, Inc.,</u>



443 F.3d 987 (8th Cir 2006). A conviction
to defraud requires intentional participation
with knowledge in a scheme to defraud. States
v. Ross 131 F.3d 970 (11th Cir 1997); Intentional
misrepresentations Neder v. United States
527 US 1, 119 S.Ct 1827, 144 L. Ed 2d 35 (1999);
United States v. Brown 79 F.3d 1550 (11th
Cir 1996).

     Had Amodeo known the Berman
memorandum did not contain the information
the AUSA or Amodeo's attorneys said it con-
tained Amodeo not only could not have pled
guilty but would have flatly refused in the
contrivance to mislead the magistrate.

     Amodeo was unaware of how the
law applied to facts and the Court was
mislead as to what the facts meant to Amodeo.

     The plea is contrary to the facts and
if not vacated could work a manifest injustice,
that would tarnish the integrity of the plea
process and the judicial system. Kercheval v.
United States 274 U.S. 220, 71 L. Ed 1009, 47 S
S.Ct. 582 (1927); U.S. v Ashburn 20 F.3d 1336
(5th Cir 1994); McCarthy v. United States 22

     A plea is not voluntary where it



based on a misunderstanding. <u>United States</u>
<u>v. Kerdachi</u> 756 F. 2d 349 (5th Cir 1985);
<u>McCarthy v. United States</u> 22 L. Ed 2d 418,
89 S Ct 1166 (1969); "A guilty plea is not valid when
a defendant has been misinformed about critical
elements of the charged offense. <u>United States v.</u>
<u>Brown</u> 117 F. 3d 471 (11th Cir 1997); <u>Henderson</u>
<u>v Morgan</u> 426 US 637 (1976)

