UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED

2009 OCT 22 PM 12: 28

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FL

United States of America,
    Plaintiff

v.                                        Case No. 6:08-cr-176-Orl-28GJK

Frank L. Amodeo,
    Defendant
_____/

NOTICE OF FILING MEMORANDA

    Comes Now Frank L. Amodeo and files the attached memoranda of law and fact addressing issues 6, 7 and 8 of the notice filed October 14, 2009.

    Issues 6, 7 and 8 are an analysis of the plea agreement using contract principles, prosecutorial error and misconduct justifying vacating the plea and deprivation of counsel, respectively.

    The memos are attached hereto and incorporated by reference.

Respectfully Submitted

10/19/09                    Frank L. Amodeo
Federal Correction Complex-Low
P.O. Box 1031
Coleman, Florida 33521

## PLEA AGREEMENT FAILS UNDER A CONTRACT ANALYSIS
## (ISSUE 6)

A plea agreement is interpreted by the principles of contract law. United States v. Ringling 988 2d 504 (4th Cir 1983); United States v. Podilla 186 F. 3d 136 (2nd Cir 1999); United States v. Yemitan 70 F. 3d 746 (2nd Cir 1995); United States v. Howle 166 F. 3d 1166 (11th Cir 1999).

Because of the United States superior bargaining power, a determination of whether the plea contract has been violated must be judged according to the defendant's understanding. United States v. Taylor 27 F. 3d 368 (11th Cir 1996).

The United States is bound not only by any promise made in the agreement, but any promise to induce the defendant to enter the plea agreement. Santabello v. New York (4971) 404 US 257; United States v. Kerdachi 756 F. 2d 345 (5th Cir 1985). This includes oral promises. Bemis v. United States 30 F. 3d 220 (1st Cir 1994).

If any of the standard contract criteria are missing or violated, the "plea contract" is voidable. Even stricter analysis for pleas because of constitutional rights surrendered. United States v. Kahn 920 F. 2d 1100 (2nd Cir 1990); Innes v. Dalshiem F. 2d 974 (2nd Cir 1988).

A contract (plea) induced by false promises; a contract (plea) where there is a misunderstanding among the parties as to condition, terms or facts; a contract (plea) where the consideration fails, is illusory or is not delivered; or a contract (plea) where a party lacks the capacity to enter the contract.

Should any of these contract criteria fail, the contract is breeched thus void or voidable. Devlin v. Ingrum 928 F. 2d (11th Cir 1991).

Amodeo experienced a failure of each criteria. Amodeo's plea was void or alternatively breeched and voidable.

Amodeo lacked the capacity to enter into the plea agreement; Amodeo had been declared incompetent by the State of Florida and Amodeo deprived of Amodeo's right to contract without prior approval of the Circuit Court Judge. Florida Statute 95.051 (1), (2) Florida Guardianship Law.

The State Court determination of incompetency was binding on the Federal Court pursuant to 28 USCS 1738. Giving full faith and credit to State Court determinations is as ancient a tradition as there is in United States jurisprudence, being embodied in the Act of 1790.

The Supreme Court has held for nearly 200 years that the Federal Courts are to give preclusive effect to State Court determinations because of the incorporation of the full faith and credit provisions into Federal Law. Mills v. Duryee (1813) 11 US 481, 3 L. Ed. 411; D'Arcy v. Ketchum (1851) 52 US 165, 13 L. Ed. 648; Christmas v. Russell (1866) 72 US 290, 18 L. Ed. 475; Cooper v. Newell (1899) 173 US 555, 43 L. Ed. 808, 19 S. Ct. 506; American Surety Co. v. Baldwin (1932) 287 US 156, 77 L. Ed. 231, 53 S. Ct. 98; Durfle v. Duke (1963) 375 US 106, 11 L. Ed. 2d 186, 84 S. Ct. 242; Kramer v. Chemical Constr. Corp. (1982) 72 L. Ed. 2d 262, 102 S. Ct. 1883; Demosthenes v. Boal (1990) 495 US 731, 110 S. Ct. 2223; 109 L. Ed. 2d 762.

Amodeo was at the time of the plea and still currently declared incompetent, the plea agreement is void.

Although the pleas is void at inception, in order to reveal the travesty of the plea process in Amodeo's case in particular, an examination of the other criteria is valuable.

Amodeo was induced into entering the plea by four unfulfilled promises: (1) substantial assistance of no less than four levels for efforts already expended by May of 2007 and the opportunity to argue for further downward departure based on the extraordinary assistance rendered; (2) a three level reduction of the "actual" sentence for acceptance of responsibility; (3) "time" credit for all monies recovered and (4) an opportunity for a trial-like hearing at sentencing. None of these promises were met and where the Government fails to meet the Government's promises, the contract (plea) should be vacated. United States v. Taylor 77 F. 3d 368 (11th Cir 1996); United States v. Horsfall 552 F. 3d 1275 (11th Cir 2009); Santobello v. New York 404 US 257, 306 L. Ed. 2d 427, 92 S. Ct. 495 (1971).

Amodeo was induced into signing the plea under false pretenses; the Government must adhere to the promises as Amodeo understood the promises or the contract (plea) is void. United States v. Harvey 869 F. 2d 1439 (11th Cir 1985); United States v. Harvey 791 F. 2d 294 (4th Cir 1986); United States v. Weiss 599 F. 2d 737 (5th Cir 1979); United States v. Brown 500 F. 2d 378 (11th Cir 1974).

To make matters even worse, the prosecutors were telling witnesses of the investigation, Amodeo would be getting the maximum sentence, while at the same time telling Amodeo's counsel not to worry, the substantial assistance and acceptance of responsibility would definitely make the plea worthwhile. This intentionally misleading Amodeo's attorneys and thus Amodeo violates Amodeo's due process and warrants at minimum of vacating the plea if not dismissing the indictment. Mabry v. Vaughn 67 F. 3d 909 (11th Cir 1995); Prosecutor's conduct held to most meticulous standards in the process. United States v. Lawlor 168 F. 3d 633 (2nd Cir 1999). When a plea rests on a promise, so that it can be said to be part of the inducement or consideration to enter the plea, the promise must be fulfilled for the plea to be a valid contract. United States v. Kurkcuter 918 F. 2d 295 (1st Cir 1990); United States v. Jones 58 F. 3d 688 (D.C. Cir 1995); San Pedro v. United States 79 F. 3d 1065 (11th Cir 1996).

Amodeo was induced into entering the plea by promises which were either intentionally made knowing the promises would not be kept (fraudulent inducement) or subsequently reneged upon by the Government; either way the contract fails.

Amodeo and the Government had a complete misunderstanding with regard to the facts which form the basis of the plea and a complete misunderstanding about the benefits for which Amodeo had bargained. Amodeo's affidavit filed on or about October 14, 2009.

Amodeo did not receive the consideration for which Amodeo had bargained, Amodeo believed Amodeo was innocent and surrendered Amodeo's right to trial upon an understanding that there would be a minimum reduction of seven level at sentencing for acceptance and assistance, Amodeo would get at least a month reduction in time for every million dollars and an opportunity to present Amodeo's story to receive even more variance. None of this was delivered.

Lack of consideration, failure of consideration or illusory consideration are the basis for cancelling a plea (voiding a contract). Blackledge v. Perry (1974) 417 US 21, 40 L. Ed. 2d 628, 94 S. Ct. 2098.

In addition to Amodeo lacking the capacity to enter into a plea, Amodeo was fraudulently induced into entering the plea, there existed a misunderstanding as to essential elements of the plea and the consideration to be delivered to Amodeo was illusory (acceptance) or not delivered (substantial assistance departure, credit for money recovered and opportunity to present Amodeo's story).

Any of the above require cancelling or vacating the plea.

## Prosecutorial Misconduct or Error Justifies Vacating a Plea. (Issue 7)

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. He may prosecute with earnestness and vigor - indeed he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods to produce a wrongful conviction as it is to use every legitimate means to bring about a just one

US Supreme Court Justice George Sutherland (1934).

This case is inundated with prosecutorial error and misconduct; which far surpass the requirement necessary for vacating a plea or even dismissing an indictment as appropriate sanction.

The United States Attorney's Office threaten to prosecute Amodeo's attorneys from the earliest ~~to the latest parts~~ phases of the investigation and throughout.

As early as April 2007, Mark Burnett, Esquire was threaten with loss of law license and possibly money laundering unless Burnett resigned

Burnett's only seeming misconduct was attempting to compete with Harrison Slaughter, Amodeo's defense

counsel for control of Amodeo's civil collection actions.

In April of 2008, the Government threaten the firm of Bates Goldberg with money laundering prosecution. This because Bates Goldberg was supposedly stirring Amodeo up by providing Amodeo exculpatory evidence. The Government and Slaughter felt that it was Bates Goldberg that was causing Amodeo to refuse to plea.

In both cases the government improperly interferred with Amodeo's attorney-client relationship.

The government also threaten many other witnesses in order to cause these individuals to not assist Amodeo or testify in Amodeo's behalf. Amongst these individuals were Shane Williams, Jedi Jaiman and Jay Stollenwerk.

Although these individuals' only actions were to prevent a complete meltdown of several companies and prevent the corresponding individual suffering; all while collecting money for the government. Because a consequence of their efforts was the production of exculpatory evidence, the government threatened them.

Threats against witnesses are presumed to be prosecutorial misconduct. <u>United States v. Schlei</u>, 122 F.3d 944 (11th Cir. 1997); <u>United States v. Terzado-Madrugo</u>, 897 F.2d 1099 (11th Cir. 1990); <u>Demps v. Wainwright</u>, 805 F.2d 1426 (11th Cir. 1986)

2

The USAO permitted untrue and factual statements to be made presented to the courts in affadavits of the investigating agent.

Even if the USAO argues it was just based on incomplete knowledge at the time of presentation within seven days the affadavit was shredded by the unsolicited (by Amodeo) response of Bates Mokwa which included hundreds of pages corroborating the fact the affadavits were inaccurate or untruthful.

Nonetheless the USAO did not correct the record and continued to advance the misrepresentation and misleading statements

This is misconduct; prosecutors must not allow inaccuracies to be presented to the court. Walker v. Davis 840 F.2d 834 (11th Cir 1988)

Amodeo was privy to conversations between various AUSA's where comments like the following were made:

"At the time Lou Pearlman was arrested the prosecutors said conviction would be "no problem because "you are only innocent until indigent." On ~~Granthe~~ another occassion; Indictment would not be a problem because Grand Jurys were so easy to manipulate the USAO could "indict a ham sandwich."

These statements were either designed for the purpose intimidating Amodeo or had the affect of reinforcing the belief the government could not be defeated regardless of the truth.

3

During the initial debriefing; where Amodeo was showing a sample of the ~~27,000 hours~~ of audio/video recordings including meetings where the ~~feds~~ officers were discussing the facts which the government believed constituted a crime, ~~the inves~~ Amodeo offered to provide the recordings to the government.

The agent in front of AUSA Gold said we do not want these because we would have to locate exculpatory evidence and provide the evidence to the defense.

This conduct violates the law, the government's broad discovery obligations require the search for Brady material. United States v. Bowie 198 F.3d 905 (D.C. Cir 1999). Government disclosure must be complete not partial. United States v. Bagley 473 US 667 (1985).

The attitude of the agents and AUSA reveal a belief that they could ignore the law with impunity. In further support of this position, AUSA Gold told Amodeo target letters were ~~not~~ easy to issue, all he had to do was go to his computer and change the names. Issuing them was so easy, ~~Gold~~ could do it himself ~~even~~ faster than even dictating the target letters for the secretary to type.

One last but certainly not the last example of the misconduct is when Gold was desperate to get a plea signed in order to shortcut the process required to get authority to prosecute.

When Amodeo refused to sign the false

4

statement of facts. Gold emailed Amodeo's defense attorneys threatening to subject their fees to civil seizure and ~~forfeiture~~ fixture, unless Amodeo signed the plea agreement without any changes.

This lead to Amodeo's counsels advising Amodeo a plea agreement was not an admission of guilt but only an admission of what the government could prove even if it meant having witnesses lie under oath.

Amodeo's attorneys further told Amodeo if the false plea statement was not signed Amodeo could be immediately arrested, his family would be embarrassed in every way possible including Amodeo's mentally retarded and handicapped stepson, all Amodeo's assets seized, Amodeo's friends targeted or indicted and Amodeo would be deprived of counsel.

The government misconduct lead to the knowing creation of false documents which the government utilized and established a pervasive tone of intimidation.

Any of these or other actions of the government could render the plea not voluntary. Taken together the effect is so prejudicial that it would justify even more severe sanctions such as dismissal of the indictment.

The significance of stopping the ever more prevalent misconduct of prosecutors and law enforcement have been recognized by many

5

courts. U.S. v Shaygan Case No. 08-20112-Cr-Gold/McAliley (S.D. Fla April 9, 2009); 2009 US Dist LEXIS 31359*6; United States v Jones 620 F Supp 2d 163 (D. Mass 2009); United States v. Stevens 593 F. Supp 2d 177 (D.D.C. 2009).

Where a plea is unfairly obtained it must be vacated. Kercheval v. United States 274 US 220, 71 L Ed 1009, 475 S.Ct. 582 (1927)

Absent the government's misconduct no plea would have been entered the plea must be vacated.

This misconduct of the prosecution taken cumulatively justifys dismissing the indictment

6

## Deprivation of Counsel
### (Issue 8)

A criminal defendant has a Sixth Admendment right to counsel at every stage of the criminal process. <u>Maine v Moulton 474 U.S. 159, 88 L. Ed 2d 481, 106 S. Ct. 477 (1985)</u> Individual is entitled to representation pretrial and posttrial. <u>Chessman v. Teets 354 US 156, 1 L Ed 2d 1253, 77 S.Ct. 1127 (1957)</u>. There is an absolute right to counsel at sentencing. <u>United States v. Green 680 F.2d 183 (D.C. Cir 1982)</u>.

Violation of a defendant's right to counsel, including a right to the counsel of defendant's choice constitutes "structural error." Structural error demands reversal and does not require showing of prejudice nor is it subject to the harmless error. <u>United States v. Gonzalez-Lopez 126 S.Ct. 2557, 165 L.Ed 2d 409 (2006)</u>.

Amodeo was deprived of the counsel of Amodeo's choice; as well as of counsel all together at two critical stages in the proceedings

Initially, at the commencement of sentencing the Government identified the first of several conflicts that existed with Amodeo's counsel. Amodeo requested an opportunity to consult with unconflicted counsel about the issue.

The Court asked Kenlen Sands, Esq if Sands could act as Amodeo's counsel. Sands said no because Sands felt Sands would have a conflict in advising Amodeo on

1

Sands' cocounsel's conflict. Amodeo asked the Court to permit Amodeo to get counsel to advise Amodeo on the issues and consequences arising from the conflict which preexisted the indictment and the plea.

The Court denied Amodeo's request, failed to appoint Amodeo counsel to advise Amodeo on the matter and did not conduct a hearing to determine if Amodeo's lead counsel Slaughter should be disqualified.

Nor how the conflict may have tainted the representation of Amodeo by the various cocounsel enlisted by Slaughter.

In addition while incarcerated in the Acute Mental Health Unit of Orange County Jail - this occurred immediately after Amodeo was remanded by the Court to US Marshals. (Amodeo was placed in this unit because of the extraordinary amount of antipsychotic and mood stabilizing medicine Amodeo was taking). Amodeo's friend filed a motion to cancel the plea, Amodeo had previously prepared. (While in Acute Mental Health Amodeo was not allowed access to mail or telephone even to contact counsel) Fortunately, Amodeo had prepared this motion in advance, so even though Amodeo was out of contact the motion still got filed.

Amodeo's attorneys eventually showed up and asked Amodeo to let them withdraw because

2

going forward they would need to be witnesses.

Amodeo was informed that it would not matter since the notice of appeal would divest the Court of jurisdiction. All future matters would be handled by the Appeals Court and Appellate counsel.

True to his word, Mr. Sands prepared and filed the notice of appeal. The court appointed Thomas Dale, Esq to represent Amodeo, but solely for the purpose of the appeal.

The pending motion appeared to be in abeyance because of the appeal. Amodeo's attorneys were allowed to withdraw from the case, but the court did not honor Amodeo's request to appoint counsel to handle post-conviction nonappellate issues.

Four months later Amodeo receives notice the court denied the motion during that entire time Amodeo was without counsel.

If counsel had been appointed the outcome may have been significantly different, but as noted above the error is "structural" and requires relief whether harmless or not.

3