UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED

United States of America,
    Plaintiff

2009 OCT 26 PM 1:30

v.

Case No. 6:08-cr-176-Orl-28GJK

Frank L. Amodeo,
    Defendant
_____/

## NOTICE OF FILING MEMORANDA

Comes Now Frank L. Amodeo and files the attached memoranda of law and fact addressing issues 1 and 2 of the notice filed October 14, 2009.

Issue 1 is actual innocence of the indicated charges.

Issue 2 is actual innocence of the charges in the plea.

The memos are attached hereto and incorporated by reference.

Respectfully Submitted

10/19/09

Frank L. Amodeo
Federal Correction Complex-Low
P.O. Box 1031
Coleman, Florida 33521

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED

2009 OCT 26 PM 1:30

United States of America,
    Plaintiff

v.

Case No. 6:08-cr-176-Orl-29GJK

Frank L. Amodeo,
    Defendant
_____/

## MEMORANDUM ON ACTUAL INNOCENCE OF INDICTMENT
### (ISSUE 1)

    Amodeo asserts Amodeo's actual innocence from all the charges in the indictment. Each and every charge of the indictment includes an element of at least specific intent and the tax counts include subjective intent.

    In order to commit a tax crime, you must subjectively be aware of the law and know you are breaking it. Cheek v. United States 492 U.S. 192 (1991); Bryan v. United States 524 U.S. 184, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998);

    This case is simply about unpaid taxes, the Government being aware that the evidence, including statements from dozens of people, indicated at least Amodeo, and possibly everyone was operating under a mistake of law, mistake of fact or in reliance upon the Internal Revenue Service's actions, chose to try to convert the case into a wire fraud case.

    The Government also realized that no authority to forfeit exists for a violation of 26 USC 7202; therefore to ensure United States Attorney's Office instead of the Internal Revenue Service got credit for recovering and thus control over the millions of dollar, the USAO had to concocted an extra crime.

    As a salve to the Internal Revenue Service, the USAO promised to get some conviction which would provide a plausible excuse for the Internal Revenue Service's embarrassing conduct of allowing the tax liability to rach such astronomical levels over two years.

    This also helped cover up the statements credited to Special Agent Patterson, an IRS agent, assigned to the Michigan Organized Crime Strike Force.

    Mr. Patterson told the general counsel of the tax payers, Presidion Solutions, Inc. I through VII, "not to worry that the nonpayment of taxes was a civil matter not a criminal matter."

    The case is replete with such representations. Agent Pace McNealy told Amodeo's CPA and Power of Attorney he and the IRS were surprised when Amodeo chose to pay hundreds of thousands of dollars for other taxpayers just as Amodeo had promised. The surprise was because Amodeo did not get a direct personal benefit from the taxes, the IRS determined Amodeo was not responsible.

    Hundreds of communications between the IRS and Amodeo's or the tax payer's accountants or attorneys were consistent with foregoing expressions of the IRS.

    In order to placate the IRS, the USAO needed to give the IRS something thus the manufactured interference with an agency charge. (Gold confirmed to Amodeo on several occassions Gold was refereeing a feud about who got credit for the money.)

    Ultimately, the USAO realized this was at best a tax; if not just a cascade of mistakes and that they would need a plea and some contrived charges to seize assets and placate the badly embarrassed IRS.

    A tax crime requires specific intent and subjective knowledge of the law being violated. Cheek v. United States 492 US 192 (1991).

    The fraud and interference crimes set forth in the indictment require knowledge of the fraud or schemes and intentionally and voluntarily participating of facilitating the schemes.

    In particular, the fraud requires obtaining money or property of another through a scheme or artifice involving false promises, premises or representations.

Amodeo never attempted or admitted to any such conduct. Amodeo was told Amodeo was liable for the acts of others and the conspiracy charge required no intent.

Amodeo willingly submitted to four separate polygraph examinations. Each examination was designed to determine if Amodeo had any fraudulent intent or engaged in any fraudulent conduct. Amodeo passed all four examinations. The examinations were conducted by Richard Kiefer, the former Senior Polygrapher for the FBI. (See polygraph results and Kiefer's qualification in addendum F to Amodeo's affidavit of October 14, 2009.)

The undercover tapes produced evidence of the lawyers being informed of the unpaid taxes and the use of the funds and affirmatively telling Amodeo the conduct was legal (Polleck undercover tape at or near minute 7 regarding August 2005 advice and then again at what Amodeo remembers as minute 17 regarding the extense discussion with outside and inside counsel in December 2005.)

The February 6, 2006 legal memorandum from Berman, Keane and Riguere which indicated the conduct was legal absent prior notice from the IRS to cease the activity and segregate the funds.

Copy of the interview notes of the Presidion general counsel, where Edith Curry, the initial attorney involved in the matter, reiterated in October 2005, "it is not illegal to not pay the taxes," it just creates civil liability.

The April 18, 2006 Chairman's (Laurie Holtz CPA one of the world's leading forensic accountants) meeting where the senior executives of Mirabilis Ventures openly discussed the $144,000,000 in payroll tax liability including certain penalties and interest (see video recording entered in part into the record and available in total upon request).

The statement of Tom Sadaka, of Berger and Singerman formerly state-wide prosecutor for the State of Florida and RICO expert, where Sadaka doing a risk review for the security subsidiary analyzed all interactions including the Presidion transactions and determined no illegality or similar risks.

The town hall meeting attended by 42 professionals, including accountants, attorneys, human resource experts, etc. is known as the "Mock Deposition" which was professionally video taped and transcribed by a court reporter.

Amodeo described in detail the planed and use of funds. (See page 87 of the transcript for one of the more explicit discussions.)

None of the attorneys present, including Amodeo's lead defense counsel raised concerns about the post conduct and further each avidly supported marketing the strategy as a marketing tool to get more cases.

This included creating a production grade video to support plans for a marketing presentation to be handled not by Amodeo, but by Mark Middleton and Sharmilla Khonokar, CPA.

Specific intent is an element of each of the charges alleged in the indictment. The tax charges which are the true essence of the case have an even higher standard of subject belief as applied to specific intent. Criminal intent is an essential element of

criminal liability. Morisette v. United States 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240 (1952); Conspiracy Crimes require "knowing and voluntary" participation United States v. Andrews 953 F. 2d 1312 (11th Cir 1992); Conspiracy crimes all have an element of specific intents. United States v. Ettinger 344 F. 3d 1149 (11th Cir 2003); United States v. Jenkins 779 F. 2d 606 (11th Cir 1986); United States v. Davis 583 F. 2d 190 (5th Cir 1978).

The Government has the burden of proofing this beyond a reasonable doubt.

The polygraphs and circumstantial evidence indicates Amodeo lacked specific intent and subjectively believed Amodeo's conduct as well as the conduct of Amodeo's colleagues was legal.

Further, Amodeo relied upon the advise of counsel and the accountants (equivalent of counsel with regard to tax matters). This reliance is an absolute defense to the charges in the indictment. United States v. Eisentien 731 F. 2d 1540 (11th Cir 1984); United States v. Condon 132 F. 3d 653 (11th Cir 1998); Even failure to give a jury instruction on good faith reliance is error. Untied States v. Goss (650 F. 2d 1336 (5th Cir 1981); United States v. Williams 728 F. 2d 1402 (11th Cir 1984).

Alternatively, the attorney's advise and Amodeo's own bankruptcy experience resulted in Amodeo operating under a mistake of law. Mistake of law is also an absolute defense to the charges in the indictment. United States v. Green 296 Fed. Appx. 820 (11th Cir. Nov 25, 2008); United States v. Jacoby 955 Fed 2d 1527 (11th Cir 1998); United States v. Metz 608 Fed 2d 147 (5th Cir 1979); United States v. Ansaldi 372 F. 2d 118 (2nd Cir. 2004); United States v. Fuller 162 F. 3d 256 (3rd Cir 1998).

Amodeo also has available the defense of "entrapment by estoppel" because of the statements of Special Agent Patterson, FBI Agent Sputo and the Fort Lauderdale AUSA (not previously described), IRS Officer McNealy and the actions of IRS Collection Officer Judy Berkowitz, the IRS Plantation Office and the statements of IRS District Counsel Joh Lordi.

Lordi told Amodeo the matter was civil not criminal. Sputo and Fort Lauderdale AUSA told Craig Vanderburg not to worry about the tax issue because payments were being made.

The representations of the Government's agents was sufficient to allay any concerns of all involved especially Amodeo, the bipolar-manic. And was interpreted not only as authorization but encouragement of the conduct.

Entrapment by Estoppel excuses the accused's conduct. The doctrine focuses on the actions of the Government officials not on the defendant's predisposition. United States v. Hedges 912 F. 2d 1397 (11th Cir 1990); United States v. Funches 135 F. 3d 1405 (11th Cir 1998); United States v. Johnson 139 F. 3d 1359 (11th Cir 1998); United States v. Faton 179 F. 3d 1328 (11th Cir 1999); Cox v. Louisiana 379 U.S. 559 (1965).

Amodeo lacked the essential intent elements for any of the indicated crimes. The charging of anything but the tax charges was an improper contrivance of the U.S. Attorney's Office and Amodeo had available the defenses of mistake of law, reliance on advice of counsel and entrapment by estoppel any of which results in a determination of not guilty and actual innocence on all counts alleged in the indictment.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

United States of America,
    Plaintiff

v.                                                     Case No. 6:08-cr-176-Orl-28GJK

Frank L. Amodeo,
    Defendant
_____/

## ACTUAL INNOCENCE: PLEA
## (ISSUE 2)

A trial court cannot accept a guilty plea unless there is a sufficient factual basis for the plea. United States v. Gobert 139 F. 3d 436 (5th Cir 1998); United States v. Johnson 194 F. 3d 657 (5th Cir 1999). A denial of a critical element of the charge has the consequence that a guilty plea cannot be accepted. McCarthy v. United States 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969).

In order for a plea to be accepted and not be void because of lack of a factual basis; the defendant must possess an understanding of the law in relation to the facts. United States v. Guichard 779 F. 2d 1139 (5th Cir. 1986); United States v. Palmer 456 F. 3d 484 (5th Cir 2006).

Amodeo agreed to plead guilty to a very specific set of facts. The statement of facts was specifically crafted by counsel for Amodeo and USAO in order to keep Amodeo from having to expressly admit specific or subjective intent.

The facts were also crafted so that Amodeo knew the facts to mean one thing but the Government to be able to present the facts to the Court in such a way as to mask the true meaning from the Court.

Amodeo was prepared by Counsel after taking the Seroquel (Sodium Penethol substitute/derivative) to insure Amodeo did not stray from the path during the colloquy.

Amodeo was assured that during the "several weeks" of the sentencing hearing; Amodeo would get a chance to clarify the meaning of the facts to the Court and for the record.

Amodeo was told Amodeo was pleading guilty to having recklessly failed to read the memorandum of the Berman law firm dated February 2006.

This was because the Berman memo, according to Amodeo's lead defense counsel and the U.S. Attorney, would have informed Amodeo of the illegality of the tax deferment strategy and that Amodeo personally had the duty to ensure payment of taxes.

Apparently, like Amodeo, neither AUSA Gold or Mr. Slaughter (lead counsel) had ever read the memo. Approximately, seven months after the change of plea hearing, Kenton Sands actually read the memo [seems Sands is the first person to do so in April 2009 - three years and two months after the memo was actually completed].

The memo did not identify the conduct as illegal, the memo actually indicated the conduct was legal. Further, the memo made no mention of any duty Amodeo or someone in Amodeo's status would have to ensure the payroll taxes were paid.

Amodeo plead guilty to nothing because the contents of the memo were not what Amodeo was told.

In other words, Amodeo was led to believe that Amodeo could be considered wilfully blind because Amodeo was reckless in not reading the memo.

Had Amodeo read the memo, it would not have told Amodeo that Amodeo had a duty and would have told Amodeo the conduct was legal.

This reading is consistent with the actions of Richard Berman, Esq. whose firm authored the memorandum.

Richard Berman did not tell Amodeo to cease this action or Berman (and his firm) would be required to withdraw, because ethically they could not represent a client in a continuing crime.

Instead, Berman became the full-time general counsel of Mirabilis Ventures, Inc. Berman was also a director of Mirabilis. Berman's law firm represented not only AModeo, but Amodeo's company AQMI Strategy Corporation, Presidion Solutions, Inc., Presidion Solutions VII, Inc. (Professional Benefits Solutions, Inc. -- one of nonpaying corporate taxpayers), AEM, Inc. (the other nonpaying corporate taxpayers) and many other of the related entities.

Berman did not believe the activities illegal nor did the Berman memo refer to the conduct as illegal that is why Berman continued to represent Amodeo, the various entities, remained a director and officer of the companies, and permitted Berman's trust accounts to be used to transfer the monies.

Amodeo would not have pled guilty to the three 7202, had the memo been read before the plea because the memo did not identify a duty for someone in Amodeo's position and the memo indicated the strategy was legal.

This was the exact opposite of what Amodeo was lead to believe at the plea -- the memo supported Amodeo's claim of actual innocence.

As to the interference with an administrative agency, Amodeo agreed that Edie Curry, Esquire and Hans Beyer, Esquire approached Amodeo during the break of the town hall styled "mock deposition".

Curry and Beyer told Amodeo that by not presenting the "Presidion Story" in a chronological order, someone may interpret the events as a premeditated plan.

Instead of a series of decisions reacting to the crisis de jure.

Amodeo agreed to tell the accountants to present the story chronologically.

The accountants never presented the story to the IRS or anyone else, chronologically or otherwise.

Amodeo, released from the drug induced stupor, asked counsel how this could be interference with an agency when the agency was never told.

Amodeo's attorney told Amodeo no requirement of specific intent was involved in either an interference or conspiracy case. Further, AModeo was told it did not matter what Amodeo thought because some of his colleagues (conspirators) could have had an intent to hamper the Internal Revenue Service.

Several problems exist with this fact being the predicate for the crime and plea.

First, the position formulated by Beyer and Curry was true and would not have misled the IRS but actually assisted the IRS in reaching the truth.

Second, absent some direct or indirect communication with the IRS, it is an impossibility that the advice could have hampered the investigation.

Third, the facets as applied to the law does not support the conclusions that a crime was committed.  A defendant must be convicted on his own proven conduct, association is not enough.  "Mere association with conspirators or knowledge of illegal activity is not a crime.  United States v. To 144 F. 3d 737 (11th Cir 1998); Untied States v. Gonzales 921 F. 2d 1534 (11th Cir 1991); United States v. Ellict 571 F. 2d 880 (5th Cir 1978).  All conspiracy crimes must be knowingly and voluntarily entered into by the accused including knowledge of the underlying crime; all require specific intent. United States v. Ettinger 344 F. 3d 1149 (11th Cir 2003); United States v. Andrews 953 F. 2d 1312 (11th Cir 1992); United States v. Jenkins 779 F. 2d 606 (11th Cir 1986); United States v. Davis 583 F. 2d 190 (5th Cir 1978).

As to the wire fraud charge, Amodeo admitted to wiring money to cover net payroll checks and health care claims one time after Slaughter had told Amodeo that the conduct was illegal (Early December 2006) and Vanir Amar had confirmed with Amodeo that "AskLaw.com" had a criminal statute 7202 which dealt with the nonremittance, collection and accounting for a payroll taxes.

The wire to cover the payroll costs did not occur until January 2007, after the time period of the conspiracy in the indictment and the taxes for the period of the wire have been paid.

The wire and tax obligation arose from AEM, Inc.'s ownership of the accounts in 2007.  Amodeo and CID (Criminal Investigation Division of the IRS) worked together in 2007 to insure the taxes were paid during 2007.

In other words, Amodeo has plead guilty to a wire fraud charge for a wire which took place after the conduct to which Amodeo plead guilty.

The meaning of the facts as understood by Amodeo when applied to the law reveal that Amodeo is actually innocent. The facts do not support a guilty plea. Legal innocence is a reason to withdraw a plea. Untied States v. Salgado -- Ocamp 159 F. 3d 469 (5th Cir 1998); if statement of facts is insufficient, the Court cannot accept the plea. United States v. Dukes 139 F. 3d 469 (5th Cir 1998); Court must reverse a conviction where the evidence is insufficient to convince a reasonable jury that a crime has been committed. Jackson v. Gobert 117 F. 3d 262 (5th Cir 1997); United States v. Carr 740 F. 2d 339 (5th Cir 1984). It has been held that an appellate court will only uphold a conviction if there is substantial evidence from which a rational trier of fact would have to find all the essential elements beyond a reasonable doubt. United States v. Alareen 261 F. 3d 416 (5th Cir 2001); United States v. Dean 59 F. 3d 1479 (5th Cir 1995).

Ambiguities in plea facts or agreements are to be determined in favor of the understanding of the defendant. _____. Any ambiguity, including the facts in a plea agreement should be "construed strictly against the Government in recognition of the Government's superior bargaining power. United States v. Aleman 286 F. 3d 86 (2nd Cir 2002); United States v. Dudden 65 F. 3d 1461 (9th Cir 1995); Rowe v. Griffin 676 F. 2d 524 (11th Cir 1982).

Amodeo and the Government did not agree on the facts which underlined the plea. Amodeo's beliefs differed significantly from those of the Government. Amodeo was led to believe these issues would be clarified at a full trial like sentencing. This impression, as well as the facts being "vaguely drafted" (see sentencing comments of Sands and Court), were intentionally created by the prosecution to hide the discrepancy in understanding from the Court in order to keep the Court from rejecting the plea.

There is no factual basis for the plea and plea without a factual basis must be vacated. United States v. Andrades 169 F. 3d 131 (2nd Cir 1999); Factual error is justification for vacating plea. United States v. Guess 203 F. 3d 1143 (9th Cir 2000).

According to Amodeo's understanding of the facts and application of those facts, no crime was committed. The plea agreement should be vacated.